STATE EX REL. CHOBOT, Petitioner, v. CIRCUIT COURT FOR MILWAUKEE COUNTY, Respondent.*

*No. State 179. Argued October 2, 1973.—Decided December 10, 1973.*
(Also reported in 212 N. W. 2d 690.)

* Motion for rehearing denied, without costs, on February 5, 1974.

For the petitioner there were briefs by *James A. Walrath, Gilda B. Shellow,* and *Shellow & Shellow,* all of Milwaukee, and oral argument by *Mr. Walrath.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   Chobot contends: (1) That sec. 944.21 (1) (a), Stats., is unconstitutionally vague under *Miller v. California* and companion cases [1] as written and as

[1] *See: Paris Adult Theatre I v. Slaton* (1973), 413 U. S. 49, 93 Sup. Ct. 2628, 37 L. Ed. 2d 446; *Kaplan v. California* (1973), 413 U. S. 115, 93 Sup. Ct. 2680, 37 L. Ed. 2d 492; *Alexander v. Virginia* (1973), 413 U. S. 836, 93 Sup. Ct. 2803, 37 L. Ed. 2d 993; *Heller v. New York* (1973), 413 U. S. 483, 93 Sup. Ct. 2789, 37 L. Ed. 2d 745; *Roaden v. Kentucky* (1973), 413 U. S. 496, 93 Sup. Ct. 2796, 37 L. Ed. 2d 757; *United States v. Orito* (1973), 413 U. S. 139, 93 Sup. Ct. 2674, 37 L. Ed. 2d 513; *United States v. 12 200-Ft. Reels of Film* (1973), 413 U. S. 123, 93 Sup. Ct. 2665, 37 L. Ed. 2d 500.

heretofore construed by this court; (2) that to meet the standards of definiteness, this court may not reconstrue the section so that it contains the test of obscenity formulated in *Miller;* and (3) even if this court reconstrues the section, such construction cannot be retroactively applied to his prior acts.

There is no definition of "obscenity" in sec. 944.21 (1) (a), Stats., which provides:

**"Lewd, obscene or indecent matter, pictures and performances.**
"(1) Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than 5 years or both:
"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film;"

As written, this section on its face is vague under the test laid down by *Miller,* which requires a definition of obscenity either expressly written in the statute or furnished by interpretation. In a homogenized society, it might be assumed everyone understands what obscenity means, at least for a reasonable period of time; but in our pluralistic society with varying, changing standards of conduct, the word "obscenity" has come to mean many different things to different people. Being a criminal statute, sec. 944.21 (1) (a) must give fair notice of what is prohibited and so, the latest pronouncement in the fluctuating definition of obscenity by the United States Supreme Court now requires the term "obscenity" to be defined and limited in its terms to sexual conduct.

Textual or pictorial obscenity is related to the freedom of speech guaranteed by the first amendment to the United States Constitution; and while it has been said that obscenity is not protected by the first amendment to the constitution, this statement must be understood

to include only obscenity defined in constitutional terms. Obscenity in a layman's sense may not be obscenity in a constitutional sense; and even what might be considered as flagrant obscenity in a layman's sense may be given constitutional protection.

*Miller,* in modifying previous rules to determine obscenity, recognizes the permissible extent to which a state may regulate expression of obscenity in a constitutional sense. The court states at page 23.

". . . We acknowledge . . . the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. . . . As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."

The guidelines to the definition of "obscenity" are:

". . . (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value." *Miller v. California, supra,* 24.

Thus the states are restricted to regulating works which depict or describe sexual conduct, which must be defined either in the statute or in its authoritative judicial construction; and the sexual conduct so defined

must be portrayed in a patently offensive manner; and the work, so portraying sexual conduct, taken as a whole, must appeal to the prurient interest in sex of the average person judged by contemporary community standards and have no serious literary, artistic, political or scientific value. All other expression or portrayal of undefined sexual conduct apparently is protected by the first amendment to the constitution.

What appeals to "prurient interest in sex" must be judged by community standards. What amounts to "patently offensive" in the manner of description is not expressly defined in *Miller*, but it is reasonable to read this term, too, as being determined by contemporary community standards (*see* our comment, page 149, in *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545). There is no vagueness in the commonly accepted meaning of the terms "literary, artistic, political or scientific value" and these are qualified by the adjective "serious" which means important and not trifling.

*Miller* has not made as many modifications of the *Roth-Memoirs* test, at least in the Wisconsin construction of its statute, as one at first blush might think. Prior to the decision in *Miller*, the prevailing test of obscenity was that articulated in *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 86 Sup. Ct. 975, 16 L. Ed. 2d 1, which itself merely redefined the test of *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498. In *Memoirs*, the court stated at page 418, that under the *Roth* test:

". . . as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of

sexual matters; and (c) the material is utterly without redeeming social value."

Chobot argues that at least three major changes were made by *Miller* in the *Roth-Memoirs* test: (1) That the statute as written or construed must specifically define sexual conduct; (2) community standards means state as opposed to national standards; and (3) the requirement that the material be "utterly without redeeming social value" has been replaced by the more definite concept that the material have "serious literary, artistic, political or scientific value."

This court in its prior construction of sec. 944.21 (1) (a), Stats., has adopted the *Roth-Memoirs* formulation of constitutional obscenity with some modifications. In *State v. Chobot* (1960), 12 Wis. 2d 110, 106 N. W. 2d 286, this court adopted the *Roth* test of obscenity and sustained the trial court's finding that certain magazines were, in fact, obscene. In so construing sec. 944.21 (1) (a), the court held the words "lewd, obscene or indecent" were not constitutionally vague and indefinite. In *Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545, the court again applied the *Roth* test of obscenity although this time in a civil action for a declaratory judgment involving sec. 269.565, Stats. The trial court had declared *Tropic of Cancer* to be obscene; after an independent review of the book, this court reversed but upheld sec. 269.565 against the challenge that it was unconstitutional for vagueness. In reversing, this court concluded the trial court had given insufficient consideration to the fact that the book had "commanded serious attention as a literary work of some importance" and stated, page 143: "[W]here a work of apparent serious purpose is involved, the scales will not readily be tipped toward the determination of obscenity."

In 1966 the United States Supreme Court decided *Memoirs v. Massachusetts, supra,* and in a plurality

opinion the *Roth* test was redefined and elaborated upon. This court thereafter modified its construction of sec. 944.21 (1) (a), Stats., to reflect the *Memoirs* formulation. In *State v. Voshart* (1968), 39 Wis. 2d 419, 159 N. W. 2d 1, the question of obscenity arose in the context of a challenge to the contraband statute, sec. 963.04 (5), and this court held the words "lewd, obscene or indecent" in that section "must be interpreted in the constitutional sense, as including only printed or filmed materials that are not protected by the first amendment to the United States Constitution as interpreted by the United States Supreme Court." The *Roth-Memoirs* test and the hard-core pornography test were both discussed and the material found obscene under both of them.

In *State v. Amato* (1971), 49 Wis. 2d 638, 183 N. W. 2d 29, the court sustained a conviction under sec. 944.21 (1) (a), Stats., for the sale of obscene material, relying on an independent review of the magazines involved and upon the *Roth-Memoirs* test. The court also considered whether the *Roth-Memoirs* test had been modified by *Ginzburg v. United States* (1966), 383 U. S. 463, 86 Sup. Ct. 942, 16 L. Ed. 2d 31, or *Redrup v. New York* (1967), 386 U. S. 767, 87 Sup. Ct. 1414, 18 L. Ed. 2d 515. We recognized that *Ginzburg* added a theory that evidence of pandering and the method of the description was relevant to the determination of the dominant purpose of the material and that *Redrup* did not foreclose a finding of obscenity even though the allegedly obscene material was not pandered or sold to minors or so obtrusively displayed as to cause unwilling viewers to see it. *Miller* has not affected these decisions.

In *State v. Kois* (1971), 51 Wis. 2d 668, 188 N. W. 2d 467,** we stated that whether this court was required to or not it had accepted the *Roth* test as modified by

** Reversed *sub nom. Kois v. Wisconsin* (1972), 408 U. S. 229, 92 Sup. Ct. 2245, 33 L. Ed. 2d 312.

*Memoirs.* In that case the court affirmed the trial court's finding that an issue of Kaleidoscope, a newspaper, was obscene. We also recognized that the test of obscenity for constitutional purposes was in a state of flux and the court had followed what had appeared to be from time to time the majority or the plurality view of the Supreme Court of the United States. The cases since *Kois* have referred to and followed the *Roth-Memoirs* test.[2]

However, not all of the steps constituting the procedure for determining obscenity were followed. In *Court v. State* (1971), 51 Wis. 2d 683, 188 N. W. 2d 475, 413 U. S. 911, 93 Sup. Ct. 3032, 37 L. Ed. 2d 1023,[3] we abandoned an independent review on appeal and fashioned a new test for scope of review in obscenity cases, concluding, p. 698, that ". . . the free-speech interest will be protected by the courts of this state when juries are strictly enjoined to follow the constitutional standards of *Roth* in making the initial determination of obscenity and when such findings are sustained on appeal only when there is substantial evidence, in view of the record as a whole, to reach that conclusion."

However, an independent review is required in *Miller* (p. 25) :

"If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment

[2] *Court v. State* (1971), 51 Wis. 2d 683, 188 N. W. 2d 475; *State v. I, A Woman—Part II* (1971), 53 Wis. 2d 102, 191 N. W. 2d 897; *Orito v. State* (1972), 55 Wis. 2d 161, 197 N. W. 2d 763; *State v. Simpson* (1972), 56 Wis. 2d 27, 201 N. W. 2d 558; *State v. Bruesewitz* (1973), 57 Wis. 2d 475, 204 N. W. 2d 514.

[3] We have considered the remand of *Court v. State, supra,* and have ordered counsel to submit their respective views on what this court's position should be in the light of *Miller* on (1) the scope of independent review and (2) the geographical area of community standards.

values applicable to the states through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary."

The majority of the court believes that the scope of the independent review is not at issue here and would not reach the question of the scope of the independent review. The court, therefore, reserves the question.

*Miller* rejected "contemporary community standards" on a national scale as unworkable. This court has never accepted a national community standard. *State v. Kois, supra; McCauley v. Tropic of Cancer, supra.* The majority of the court does not reach the question of what constitutes community standards and, therefore, reserves the question.

In *Paris Adult Theatre I v. Slaton, supra,* the United States Supreme Court held that it was not error to fail to require expert evidence that certain materials are obscene when the materials themselves are placed in evidence. Prior to these decisions, this court expressly held in *Amato,* in *Court,* and in *I, A Woman* that it was not error to reject expert evidence that certain material was obscene according to community standards when the material itself was placed in evidence.[4]

---

[4] *Paris Adult Theatre* cited *State v. Amato, supra,* certiorari denied, *sub nom. Amato v. Wisconsin* (1972), 404 U. S. 1063, 92 Sup. Ct. 735, 30 L. Ed. 2d 751. While the supreme court expressly reserved judgment in *Paris Adult Theatre* on the question of whether the trier of fact is capable without expert testimony of determining the prurient appeal of material directed at a bizarre deviant group (a problem posed by *Mishkin v. New York* (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56) [this reservation is no longer relevant under *Miller* because the test is the average man].***

*** Withdrawn. *See* memorandum opinion on motion for rehearing, post, p. 374a.

Chobot claims *Miller* changed the standard which required the obscene material to be "utterly without any redeeming social value" to require that the material lack "serious artistic, political or scientific value." The "utterly without" part of the *Roth-Memoirs* test was never strictly followed by this court. As pointed out in the concurring opinion in *Voshart,* this test was a misapplication of the language in the original *Roth* decision and the word "utterly" added nothing to the word "without." In *Court,* the court took the view that the value which might save obscene material and cloak it with a constitutional protection must be social and must be redeeming and such words "carry the implicit connotation of a fact finder's value judgment. They are words that suggest a balancing of interests." This view was reiterated in *State v. I, A Woman—Part II, supra,* at pages 118, 119, in which it was stated:

"Nor do we believe that the value that will redeem a prurient piece that affronts contemporary community standards is a miniscule value, a mere scintilla of social value, an 'iota,' or infinitesimal value. If the material is objectionable on the first two *Roth-Memoirs* standards, it will be redeemed only by a social value that is discernible to a reasonable finder of fact, is demonstrable, and not conjectural. It should pervade the material, and cannot appear as noble platitudes with a social message unrelated to the uniform tenor of the material. The third standard of the *Roth-Memoirs* test presupposes that the qualities that purport to save the material as evincing redeeming social value are not mere makeweight contrived to avoid the operation of the rule."

In *McCauley v. Tropic of Cancer, supra,* this court took the view that a literary work had to have a "serious purpose" and we stated: ". . . we are of the opinion that where a work of apparent serious purpose is involved, the scales will not readily be tipped toward the determination of obscenity." Thus this court in its construction of

the *Roth* test required a serious purpose to constitute social value. So far as Wisconsin is concerned, all *Miller* has done is to limit the concept of "social value" to a more restrictive literary, artistic, political or scientific sense; all of which are of social value. Consequently, *Miller* made no substantial change in this respect in the Wisconsin interpretation.

The only deficiency in sec. 944.21 (1) (a), Stats., is that it does not contain an express definition of obscenity in terms of sexual conduct and our previous opinions have not expressly so limited obscenity. The question is whether this court can now save the section by interpretation and supply a constitutional definition of obscenity. It is argued by Chobot that this court cannot because its previous interpretations have become a part of the statute under the doctrine "A decision construing a statute becomes an integral part of the statute itself." [5] This doctrine, frequently followed by the court, has also been honored in its breach. There have been times when this court has changed its construction of a statute without referring to the doctrine. The doctrine is not all-embracing and it may well apply only to the construction of words which have a static meaning and are so used. However, words which carry constitutional implications stand on a different footing, and when a word, such as obscenity, is used without an expressed definition in the

[5] *Milwaukee County v. City of Milwaukee* (1933), 210 Wis. 336, 246 N. W. 447; *Thomas v. Industrial Comm.* (1943), 243 Wis. 231, 10 N. W. 2d 206; *Zimmerman v. Wisconsin Electric Power Co.* (1968), 38 Wis. 2d 626, 157 N. W. 2d 648. In *Zimmerman*, this doctrine was explained as resting on the principle that once the court has perceived and enunciated the unchanging historical fact of legislative intent, legislative acquiescence in the court's interpretation amounts to acknowledgment that the court was correct. Since legislative intent is a historical concept, once discerned and acquiesced in, it cannot later be said to be something else.

statute, the legislature must intend the courts to furnish its meaning from time to time as the constitutional concept of that word varies. The constitution is a living document and words in statutes dependent upon the constitution must be no less elastic. Under this theory, this court interpreted "obscenity" first in terms of *Roth* and then modified its interpretation in terms of *Memoirs*. *See, e.g., State v. Voshart, supra,* and *State v. Kois, supra.* If the alleged doctrine of statutory interpretation were strictly applied, this court could not have adopted *Memoirs'* modification. It may be that the doctrine prevents a complete reversal of interpretation, but we do not reach that issue because here we make only a refinement or modification of meaning to keep the statute from being unconstitutional. Besides, this court has the duty to uphold the statute if it can and in the past has supplied deficiencies to save a statute. *See Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646, where this court granted a judicial hearing in sex deviate cases not provided for by the statute in order to save the statute.

We recognize there is a split of authority in other states on this point. The Supreme Court of Indiana has held its obscenity statute unconstitutional for lack of definition. *Stroud v. State* (Ind. 1973), 300 N. E. 2d 101. On the other hand, in *State v. J–R Distributors, Inc.* (1973), 72 Wash. 2d 584, 512 Pac. 2d 1049, the Washington Supreme Court upheld its state statute prohibiting the sale of obscene material by affording the term "obscenity" an "authoritative judicial construction" pursuant to its understanding of the mandate of *Miller*. In *United States v. Thevis* (5th Cir. 1973), 484 Fed. 2d 1149, the Fifth Circuit Court of Appeals took the position that the specific descriptions of sexual conduct demanded of a statute by *Miller* can be supplied by authoritative judicial construction. That is precisely what the United

States Supreme Court did itself in *12 200-Ft. Reels of Film* (1973), 413 U. S. 123, n. 7, 93 Sup. Ct. 2665, 2670, n. 7, 37 L. Ed. 2d 500. The Ohio Supreme Court in *State ex rel. Keating v. "Vixen"* (1973), 35 Ohio St. 2d 215, 301 N. E. 2d 880, has construed its obscenity statute to comport with the standards enunciated in *Miller. See also: People v. Enskat* (1973), 109 Cal. Rptr. 433, and *Rhodes v. Florida* (Fla. Sup. Ct. 1973), 283 So. 2d 351.

Additional support for the proposition that this court may now construe the statute to comport with the *Miller* formulation of obscenity may be found in *Miller* itself, p. 24, n. 6:

"We do not hold, as Mr. Justice BRENNAN intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore, or *hereafter,* may well be adequate. (Emphasis supplied.) *See United States v. 12 200-Ft. Reels of Film* [413 U. S. 123, p. 130, n. 7, 93 Sup. Ct. 2665, 2670, 37 L. Ed. 2d 500 (1973)]."

Consequently, *Miller* did not reverse the lower court but "vacated and remanded for further proceedings." The court directed the remand court to conduct further proceedings in a manner "not inconsistent with the first amendment standards established by this opinion." *Miller* at 37. In *Paris Adult Theatre,* a companion case to *Miller,* the court stated:

". . . In light of these holdings, nothing precludes the state of Georgia from the regulation of the allegedly obscene material exhibited in Paris Adult Theatre I or II, provided that the applicable Georgia law, as written or authoritatively interpreted by the Georgia courts, meets the First Amendment standards set forth in *Miller v. California* . . . ." (p. 69)

Again, the United States Supreme Court's mandate reads vacated and remanded for further proceedings.

This mandate appears in all the *Miller* companion cases. Significantly, at the conclusion of each opinion, where the remand court is directed to conduct further proceedings not inconsistent with the first amendment standards established by *Miller,* the supreme court cites *United States v. 12 200-Ft. Reels of Film* (1973), 413 U. S. 123, p. 130, n. 7, 93 Sup. Ct. 2665, 2670, n. 7, 37 L. Ed. 2d 500. This footnote reads:

"We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes . . . If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral,' as used to described regulated material in 19 U. S. C. sec. 1305 (a) and 18 U. S. C. sec. 1462 . . . we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California,* ante, at 25 . . . Of course, Congress could always define other specific 'hard core' conduct."

Thus it appears the United States Supreme Court has in effect construed the federal statute and has invited state appellate courts to construe their obscenity statutes to comport with the *Miller* standards.

We conclude this court has the power and the duty to define "obscenity" in terms of minimum standards to save the statute. If the legislature of Wisconsin desires to modify or add to such definition, it certainly has the power to do so. We, therefore, construe the word "obscene" in sec. 944.21 (1) (a), Stats., to mean works which depict or describe sexual conduct, and (1) which taken as a whole appeal to the prurient interest in sex, (2) which taken as a whole portray sexual conduct in a patently offensive way and (3) which taken as a whole do not have serious literary, artistic, political or scientific value. Whether a work appeals to the prurient

interest and whether it depicts or describes sexual conduct in a patently offensive way and whether it has serious literary, artistic, political or scientific value are to be determined by its effect upon the average person applying contemporary community standards.**** Sexual conduct is defined to be acts of sexual intercourse between humans, normal or perverted, actual or simulated, acts of masturbation, fellatio, cunnilingus, and acts of excretory function, lewd exhibition of the genitals especially in a stimulated condition and sexual relations between humans and animals. As thus authoritatively construed, sec. 944.21 (1) (a) meets the test postulated by *Miller*.

The last argument of Chobot is that this court's construction of sec. 944.21 (1) (a), Stats., to comport with *Miller* cannot apply to him because he had no fair warning of such construction.

Chobot cites *Bouie v. Columbia* (1964), 378 U. S. 347, 84 Sup. Ct. 1697, 12 L. Ed. 2d 894, for the proposition that the construction may not apply. Mr. Justice DOUGLAS cited this case for the same proposition in his dissent in *Miller* (p. 37). However, since the mandates in *Miller*, *Paris Adult Theatre I, 12 200-Ft. Reels of Film*, and *Orito*, and companion cases, did not reverse but only vacated and remanded the cases for further proceedings not inconsistent with *Miller*, it would appear the supreme court intended its latest expression of the standards to be applied to offenses committed prior to its announcement in *Miller*. The supreme court has long recognized that once a limiting construction of a criminal statute is rendered which is sufficient to rehabilitate the potential vagueness of the statute, such construction may be applied to punish conduct occurring prior to the construction. *Dombrowski v. Pfister* (1965), 380 U. S. 479,

---

**** *See* added parenthetical citation in memorandum opinion on motion for rehearing, post, p. 374b.

n. 7, 85 Sup. Ct. 1116, 14 L. Ed. 2d 22; *Poulos v. New Hampshire* (1953), 345 U. S. 395, 73 Sup. Ct. 760, 97 L. Ed. 1105; *Cox v. New Hampshire* (1941), 312 U. S. 569, 61 Sup. Ct. 762, 85 L. Ed. 1049; *Winters v. New York* (1948), 333 U. S. 507, 68 Sup. Ct. 665, 92 L. Ed. 840. This doctrine, however, is subject to the limitation that such application affords fair warning to the defendant. *Lanzetta v. New Jersey* (1939), 306 U. S. 451, 59 Sup. Ct. 618, 83 L. Ed. 888; *see also: Younger v. Harris* (1971), 401 U. S. 37, 51, 91 Sup. Ct. 746, 27 L. Ed. 2d 669. *Douglas v. Buder* (1973), 412 U. S. 430, 93 Sup. Ct. 2199, 37 L. Ed. 2d 52. The *Bouie Case* relied on by Chobot states substantially the same rule.

"When . . . [an] *unforeseeable* state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of *fair warning* that his contemplated conduct constitutes a crime." (Emphasis supplied.) *Bouie v. Columbia, supra,* at 354, 355.

The question thus is whether the foregoing construction was so unforeseeable as to preclude its retroactive application to punish conduct occurring prior to the rendition of this construction.

Some trial courts in decisions rendered subsequent to *Miller* have discussed the retroactivity issue without deciding it. *See Hamar Theatres, Inc. v. Cryan* (D. C. N. J. 1973), 365 Fed. Supp. 1312; *Literature, Inc. v. Quinn* (1st Cir. 1973), 482 Fed. 2d 372; *Papp v. State* (Fla. 4th Dist. Ct. of App. 1973), 281 So. 2d 600; *United States v. Lang* (D. C. Cal. 1973), 361 Fed. Supp. 380. *See also: Rhodes v. State* (Fla. Sup. Ct. 1973), 283 So. 2d 351.

However, in our view, *Miller* has not made such drastic changes in the law of obscenity that the now *Roth-Memoirs-Miller* test needs to be specifically brought to

the attention of all persons before it can be said that the notice comports with due process. The changes and modifications wrought by *Miller* are not so substantial in view of this court's prior interpretations of the statute that due process requires that a defendant be given notice of the latest modifications. Nor are the changes so serious as to mislead one intent on obeying the law. Chobot has not yet been tried so we do not know what the evidence may show, but the definition of obscenity in *Miller* covers less ground than the previous interpretation of the statute by this court and in that respect Chobot cannot be hurt and should be tried under the interpretation of sec. 944.21 (1) (a), Stats., herein declared.

While the state argues that Chobot's conduct might permissibly be judged according to the *Roth-Memoirs* test since it occurred prior to the *Miller* opinion, we concluded this is contrary to the mandates. The mandates in *Miller, Paris Adult Theatre, 12 200-Ft. Reels of Film,* and companion cases, leave no doubt that the *Miller* test rather than the *Roth-Memoirs* test should be applied in the further proceedings; a fortiori the *Roth-Memoirs-Miller* test should be applied to other pending cases.

*By the Court.*—The petition for a writ of prohibition is denied.

WILKIE, J. *(concurring).* I would reach the question of the scope of the independent review by this appellate court and join in the separate opinion of Mr. Chief Justice HALLOWS as to the scope of that review. Agreeing with the majority I would not at this point reach the question of the geographical area of the community standards.

HALLOWS, C. J. *(dissenting, in part).* I would reach the question of the scope of the independent review by

this court and also state what this court has held community standards to mean. It is not a question of reaching community standards. *Miller* has not changed our prior decisions on this question. When this court heard this case in its initial stage as a motion, it decided to change the proceeding to one for an original action. I thought it was intended that the opinion would answer all the questions raised by *Miller* so that this case and other pending cases could be tried with some degree of certainty if we held the statute constitutional.

There is no question that the scope of the independent review must include all the elements of obscenity. This court cannot make a review of part of a constitutional concept and have different tests for another part of the concept. Due process under *Miller* requires that this court exercise its independent judgment in reviewing a determination that material is obscene in the constitutional sense and this review must encompass all three elements which make up the concept of obscenity.[1] In an independent review, this court is not bound by such

[1] The quoted directive from *Miller* at p. 24 must be considered in the light of the court's later statement that the application of community standards to arrive at a determination of what appeals to the prurient interest or is patently offensive constitutes a factual determination. Considering the authority cited by *Miller* and in light of *Kois v. Wisconsin,* each element of the obscenity test calls for the determination of a "question of constitutional fact," which must be independently reviewed by the appellate court. *See Miller* at 25, citing *Kois v. Wisconsin,* 408 U. S. at 232; *Memoirs v. Massachusetts, supra,* 383 U. S. at 459, 460 (HARLAN, J., dissenting); *also Watts v. Indiana* (1949), 338 U. S. 49, 51, 69 Sup. Ct. 1347, 93 L. Ed. 1801, wherein it is stated: ". . . 'issue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion incorporates standards of conduct or criteria for judgment which in themselves are decisive of constitutional rights. Such standards and criteria, measured against the requirements drawn from constitutional provisions, and their proper applications, are issues for this court's adjudication."

appellate rules as "credible evidence to sustain the verdict," "the great weight and clear preponderance" or any other limiting rule.[2] These are now only factors which may be considered in exercising the court's independent judgment. The United States Supreme Court in its obscenity decisions on independent review has not been bound by ordinary appellate review rules.

I see no problem on contemporary community standards. This court never did accept the concept of national community standards.[3] *State v. Kois* (1971), 51 Wis. 2d 668, 188 N. W. 2d 467; *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545. Therefore, *Miller* has not changed the Wisconsin law as it existed prior to that decision. Nor do I read *Miller* as requiring local standards. The Wisconsin law was a statewide standard, not local.

Community standards must be statewide. If we adopt local standards, are they to be on a city basis, county basis, circuit court basis, or some other basis? Should something be determined not obscene in Milwaukee and yet be obscene in Pepin county? Is there to be a separate standard for metropolitan areas different from rural areas? Are the federal courts in Wisconsin to follow the community standards of the state courts or is there to be one standard in the eastern district and another in

---

[2] *See: Court v. State* (1971), 51 Wis. 2d 683, 188 N. W. 2d 475.

[3] This requirement that juries apply some mythical national standard first originated in the opinion of Justices BRENNAN and GOLDBERG in *Jacobellis v. Ohio* (1964), 378 U. S. 184, 84 Sup. Ct. 1676, 12 L. Ed. 2d 793. They argued that application of a local community standard would have the " 'intolerable consequence of denying some sections of the country access to material, there deemed acceptable, which in others might be considered offensive to prevailing community standards of decency.' " *Jacobellis v. Ohio, supra,* 193, quoting from *Manual Enterprises v. Day* (1962), 370 U. S. 478, 488, 82 Sup. Ct. 1432, 8 L. Ed. 2d 639 (opinion of HARLAN, J.).

the western district because the juries are drawn from different districts? If the jury is waived, what then is the area of the local standard? If a national standard is unworkable, as *Miller* says it is, I find a local standard much more unworkable than national standards.

In *Tropic of Cancer* and in *Kois* this court committed itself to statewide community standards. This court applied a statewide standard on the reasoning, subsequently accepted by the United States Supreme Court in *Miller,* that anything else would be unworkable. Since sec. 269.565 (6), Stats.,[4] permitted a judgment of obscenity to be used collaterally in a criminal trial in some cases, the standard could not be less than statewide. If Wisconsin does not have a statewide standard, this statute is emasculated. The majority members, by not reaching this question and so stating, leave the impression that perhaps local standards are justified. This approach not only furnishes no guidance but invites appeals.

The following opinion was filed on February 5, 1974:

PER CURIAM *(on motion for rehearing).* In this court's original opinion in *State ex rel. Chobot v. Circuit Court,* this court wrote:

". . . Whether a work appeals to the prurient interest and whether it depicts or describes sexual conduct in a patently offensive way and whether it has serious

---

[4] "269.565 Declaratory judgments against obscene matter. . .

"(6) ADMISSIBILITY IN CRIMINAL PROSECUTIONS. In any trial for a violation of s. 944.21 or 944.22, the proceeding under this section and the final judgment of the circuit court under sub. (3) or (5) or the interlocutory adjudication under sub. (lm), shall be admissible in evidence on the issue of the obscenity of said matter and on the issue of the defendant's knowledge that said matter is obscene; provided, that if the judgment of the court sought to be introduced in evidence is one holding the matter to

literary, artistic, political or scientific value are to be *determined by its effect upon the average person* applying contemporary community standards." (Emphasis supplied.) *State ex rel. Chobot v. Circuit Court,* ante, p. 354, 369, 212 N. W. 2d 690.

This has been read by both the petitioner and the respondent therein as constituting a disavowance by this court of the United States Supreme Court's decision in *Mishkin v. New York* (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56 as it applies to allegedly obscene material which is directed towards a deviant group. Such is not the case. If material is aimed at a particular deviant group rather than the average person, then such material should be judged upon its impact upon that deviant group.

Thus, it is our opinion that the following clause which appears in footnote 4 on page 364 should be withdrawn.

". . . this reservation is no longer relevant under *Miller* because the test is the average man."

Similarly, it is our opinion that this court's opinion should be amended to read as follows:

Whether a work appeals to the prurient interest and whether it depicts or describes sexual conduct in a patently offensive way and whether it has serious literary, artistic, political or scientific value are to be determined by its effect upon the average person applying contemporary community standards. (*See,* however, *Mishkin v. New York, supra.*)

---

be obscene, it shall not be admitted unless the defendant in said criminal action was served with notice of the action under this section, or appeared in it, or is later served with notice of the judgment of the court hereunder, and the criminal prosecution is based upon conduct by said defendant occurring more than 18 hours after such service or such appearance, whichever is earlier."

Motion for rehearing denied.

HALLOWS, C. J. *(dissenting on motion for rehearing).* I do not believe this state has two standards under sec. 944.21 (1) (a), Stats., which this court is construing. I see no reason why a sexually deviant group should have its own standard of obscenity and be allowed to buy material which the average man cannot. A sex deviant should not have greater rights than the average man. *Miller* does not give such rights.

I am authorized to state Mr. Justice ROBERT W. HANSEN joins in this dissent.