**DETCO, INC., a Wisconsin corporation, Plaintiff,**

v.

**E. Michael McCANN, Individually and as District Attorney for Milwaukee County, Wisconsin, et al., Defendants.**

No. 72–C–121.

United States District Court,
E. D. Wisconsin.

June 13, 1974.

Shellow & Shellow, by James A. Walrath, Milwaukee, Wis., for plaintiff.

Francis J. Slattery, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

Before FAIRCHILD, Circuit Judge, and REYNOLDS and GORDON, District Judges.

MYRON, L. GORDON, District Judge.

This is an action brought by the plaintiff, Detco, Inc., pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. §§ 1983 and 1985, challenging the constitutional validity of the Wisconsin obscenity statute, § 944.21, Wis.Stats. Both declaratory and injunctive relief are sought.

Detco owns and operates the Parkway Theatre, which is located in Milwaukee. The defendant, E. Michael McCann, is the district attorney for Milwaukee County, and his office has clearly been threatening to prosecute. However, no criminal proceedings are pending in this matter.

On July 20, 1972, Judge Reynolds, a member of this court sitting as a single judge, issued a temporary restraining order preventing the defendants from enforcing § 944.21. See Detco v. Breier, 349 F.Supp. 537 (E.D.Wis.1972). The three-judge panel heard oral argument on Detco's motion for a preliminary injunction on May 3, 1973. That matter was taken under advisement, but before an opinion was issued, the United States Supreme Court restated the applicable law.

The Supreme Court rendered its decision in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), on June 21, 1973. In a decision and order dated October 19, 1973, we denied the defendants' subsequent motion to vacate the temporary restraining order in light of Miller, asserting that the "probability that the express wording of § 944.21 will be held unconstitutional is greater after Miller v. California, supra, than before."

At the same time, we indicated that we would "refrain from ruling on the merits until the state has had an opportunity to change the present law by either judicial construction or statute." See Detco v. McCann, 365 F.Supp. 176, 178 (E.D.Wis.1973).

On March 5, 1974, we heard oral argument on the defendants' renewed motion to vacate the temporary restraining order, this time in light of State ex rel. Chobot v. Circuit Court, 61 Wis.2d 354, 212 N.W.2d 690 (1973). In Chobot, the Wisconsin supreme court purported to "reconstrue" § 944.21 to comport with the changes in the law of obscenity wrought by Miller. While the March 5, 1974, hearing before this court was noticed for the purpose of considering the defendants' renewed motion to vacate the temporary restraining order, counsel agreed at that hearing that the substantive issues involved in this case were ripe for final resolution.

Notwithstanding the Wisconsin supreme court's determination to the contrary in Chobot, this court concludes that the challenged criminal statute may not be applied retroactively; in our opinion, the changes and modifications in the law of obscenity occasioned by Miller are so substantial that due process requires that a defendant receive prior notice thereof.

Prior to Miller, the standard definition of obscenity was embodied in the three-pronged test formulated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). Under the old Roth-Memoirs test, to establish obscenity:

"[T]hree elements must coalesce; it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material

is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977.

Under the new *Miller* test, however, the legal definition of obscenity was substantially changed:

"[T]he basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value." 413 U.S. at 24, 93 S.Ct. at 2615.

It is fair to assume that, prior to *Miller,* the plaintiff relied upon and gauged its activities against the now defunct *Roth-Memoirs* obscenity test, which required that the material be "utterly without redeeming social value." As Mr. Chief Justice Burger noted, in writing for the majority in *Miller,* that requirement represented "a burden virtually impossible [for the prosecution] to discharge under our criminal standards of proof." 413 U.S. at 22, 93 S.Ct. at 2613.

The newly formulated *Miller* test, as engrafted upon § 944.21 by the Wisconsin supreme court in *Chobot* and in *Court v. State,* 63 Wis.2d 570, 217 N.W. 2d 676 (decided May 8, 1974), eases the prosecution's burden and enhances the likelihood of conviction. The new test simply requires the prosecution to show that "the work, taken as a whole, lacks serious literary, artistic, political or scientific value." Moreover, something less than a national "community standard" test is now permitted. 413 U.S. at 31, 93 S.Ct. 2607. See also, Jacobellis v. Ohio, 378 U.S. 184, 192–195, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). In short, the new *Miller* test has substantially changed the law of obscenity and made it easier to convict.

To apply retroactively the judicial construction now placed on § 944.21 in *Chobot* and *Court* would deprive the defendants of due process by denying them fair warning that their actions, when committed, constituted a crime. In Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), the Supreme Court held that the retroactive application of a court interpretation offends the due process clause where, as here, the decision is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." 378 U.S. at 354, 84 S.Ct. at 1703. See also, United States v. Lang, 361 F.Supp. 380 (C.D.Cal.1973).

It should be noted that in United States v. Marks, 364 F.Supp. 1022 (E. D.Ky.1973), the district court ruled in the opposite manner upon an identical retroactivity argument. However, we reject that court's view that the "Miller group did not create a new definition of illegal conduct, but merely clarified earlier concepts of obscenity of which the defendants were constructively aware." 364 F.Supp. at 1027. See Amato v. Divine, 496 F.2d 441 (decided March 12, 1974).

In concluding that its construction of § 944.21 could be applied retroactively, the Wisconsin supreme court, in *Chobot,* was of the view that the *Miller* test "covers less ground than the previous interpretation of the statute *by this court* and in that respect [the defendant] cannot be hurt and should be tried under the interpretation of sec. 944.21 . . . herein declared." (emphasis added). 61 Wis.2d at 371, 212 N.W.2d at 699. Such reasoning cannot stand where, prior to *Miller,* a *national* "community standard" applied and there obtained a "virtually impossible" burden upon the prosecution. See Jacobellis v. Ohio, 378 U.S. 184, 192–195, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); see also Miller v. California, 413 U.S. 15, 22, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Prior to *Miller,* it can safely be assumed that the citizenry, including this

plaintiff, looked to the United States Supreme Court as the final arbiter on the issue of obscenity, notwithstanding any attempt by a local jurisdiction to create a less than national "community standard". The plaintiff could not reasonably have anticipated the *Miller* decision. The due process-notice impact of the *Miller* decision was not any the less serious because, in its pre-*Miller* interpretations of § 944.21, the state of Wisconsin had purported to establish tests for obscenity which differed from *Roth-Memoirs* and tended to "anticipate" *Miller*. In short, the state's pre-*Miller* attempts to establish any test for obscenity other than *Roth-Memoirs* were not controlling; to the extent that such decisions may have coincided with *Miller*, no constructive notice was worked upon the plaintiff with regard to its pre-*Miller* conduct.

Conduct which had been defensible under *Roth-Memoirs* could result in conviction under the new judicial construction of that criminal statute in *Chobot* and *Court*. Therefore, we conclude that it must not be given retroactive effect. See Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Bouie v. Columbia, 378 U.S. 347, 84 S. Ct. 1697, 12 L.Ed.2d 894 (1964); Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

In *Miller*, the Supreme Court required the states to define specifically the conduct which may fall within the definition of obscenity. 413 U.S. at 24, 93 S. Ct. 2607. Prior to *Miller* it was clear that § 944.21 was required to have reference to a national standard, notwithstanding the Wisconsin supreme court's pre-*Miller* efforts to recognize only a state-wide test. See State v. Kois, 51 Wis.2d 668, 188 N.W.2d 467 (1971), reversed 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

■ To the extent that it rejected the *national* "contemporary community standard" first announced in Jacobellis v. Ohio, supra, the Supreme Court in *Miller* left to each of the states the task of defining the applicable community standard—local, municipal, or state. 413 U.S. at 30–34, 93 S.Ct. 2607. In the aftermath of *Miller*, therefore, the definition of "contemporary community standards" for purposes of the proper application of § 944.21 was unclear. The Wisconsin supreme court declined to define the applicable community standard until May 8, 1974, when it decided Court v. State. A majority of this court concludes, therefore, that § 944.21 remained constitutionally deficient at least until that time and that retroactivity should be measured from that date.

■ The granting of declaratory relief to the plaintiff is consistent with the Supreme Court's recent ruling in Steffel v. Thompson, 415 U.S. 452, 94 S. Ct. 1209, 39 L.Ed.2d 505 (1974). However, in footnote 12 of that decision, the Court said:

"We note that, in those cases where injunctive relief has been sought to restrain an imminent, but not yet pending, prosecution *for past conduct*, sufficient injury has not been found to warrant injunctive relief, see Beal v. Missouri P.R. Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); Spielman Motor Sales Co., Inc. v. Dodge, 295 U.S. 89, 55 S.Ct. 378, 79 L.Ed. 1322 (1935); Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926)."

In view of the above, a majority of this court concludes that the granting of injunctive relief to the plaintiff is barred by *Steffel*. We decline to issue injunctive relief to restrain an imminent, but not yet pending, prosecution for past conduct.

Therefore, it is ordered that the defendants' motion for an order vacating the present temporary restraining order be and hereby is granted.

It is also ordered that judgment be entered declaring that § 944.21, Wis. Stats., as construed prior to May 8, 1974, was unconstitutional, and that

prosecutions under § 944.21 for conduct occurring prior to such date are unconstitutional as violative of the due process requirements of "fair notice".

FAIRCHILD, Circuit Judge (concurring in part, dissenting in part).

I would modify our judgment so as to declare that § 944.21, Wis.Stats., as construed prior to December 10, 1973, the date of the decision of the Supreme Court of Wisconsin in *Chobot* was unconstitutional and that prosecutions under § 944.21 for conduct occurring prior to that date are unconstitutional as violative of the due process requirements of "fair notice." That is sufficient for the facts of the case before us, and I would reserve the question as to conduct occurring between December 10, 1973 and May 8, 1974, the date of the decision in *Court.*

I emphasize that in *Miller,* the Supreme Court of United States required, to insure "fair notice," that the statute, as written or construed, specifically define the sexual conduct the depiction or description of which is prohibited. *Miller,* 413 U.S. 15, 24, 27, 93 S.Ct. 2607, 37 L.Ed.2d 419. I consider the Wisconsin Court's addition of the specific definition of sexual conduct, newly required by the Supreme Court of the United States in *Miller,* a more significant change in the Wisconsin obscenity statute than does the Wisconsin Supreme Court. See *Chobot,* 61 Wis.2d 354, 371–372, 212 N.W.2d 690. Moreover, the importance of this change, for purposes of "fair notice" is heightened by the *Miller* change in standard from "utterly without redeeming social value" to "lack[ing] serious literary, artistic, political or social value" (thereby enhancing the likelihood of conviction) and by the confusion with respect to this element, at the time of plaintiff's conduct involved in this case, arising from differing expressions on the matter in earlier decisions of the Supreme Court of the United States and the Wisconsin Supreme Court. See *Chobot,* 61 Wis.2d 354, 364–365, 212 N.W.2d 690.

I do not, however, attach as much significance as does the majority of this court to the question of the definition of "community" in the phrase "contemporary community standards." I recognize, as does the majority, that the Wisconsin Supreme Court expressly reserved this question in *Chobot,* decided December 10, 1973, and did not resolve this uncertainty until Court v. State, 63 Wis.2d 570, 217 N.W.2d 676, decided May 8, 1974. I do not think it clear, however, that the absence of a specific definition of "community" invalidated application of the statute as construed in *Chobot* during the interim prior to Court v. State, either on the basis of the requirements set out by the Supreme Court of the United States in *Miller* or on general vagueness grounds. Necessarily the addition by *Chobot* of a specific definition of sexual conduct, the depiction or description of which is forbidden, made the test which depend on contemporary community standards less significant as a practical matter in terms of fair notice than they were under the law before *Miller.*