**Errol J. SIMPSON, Petitioner,**

v.

**Calvin SPICE, Sheriff of Outagamie County, Wisconsin, and Circuit Court, Tenth Circuit, Outagamie County, Wisconsin, Respondents.**

No. 74-C-514.

United States District Court,
E. D. Wisconsin.

Feb. 21, 1975.

James A. Walrath, Shellow & Shellow, Milwaukee, Wis., for petitioner.

Bronson C. La Follette, Atty. Gen., by Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is a petition for issuance of a writ of habeas corpus. On December 1, 1970, the petitioner, Errol Simpson, was convicted in a Wisconsin state court on three counts of selling obscene material in violation of § 944.21(1)(a), Wis. Stats. Mr. Simpson was sentenced to two concurrent indeterminate terms of not more than one year for selling magazines entitled "Flip Flop" (count one) and "Heads Up" (count two). In addition, a consecutive indeterminate term of not more than two years was imposed for the third count, which involved the sale of magazines entitled "Jaybird Scene" and "Wild Cats".

The petitioner's conviction was affirmed on October 31, 1972. State v. Simpson, 56 Wis.2d 27, 201 N.W.2d 558 (1972). He has remained free on an appeal bond, however, in the constructive custody of the respondent sheriff.

The petitioner challenges his 1970 conviction on three grounds. First, he maintains that as a matter of law, each of the four publications which he was convicted of selling is not obscene. Next, he asserts that the state trial court erroneously instructed the jury to weigh the prurient appeal or patent offensiveness of each publication as against its social value. Finally, he argues that he was convicted under § 944.21(1)(a) at a time when that obscenity statute was unconstitutionally vague and failed to meet the standards for definiteness which were announced later by the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The first and third grounds are not supportive of this application for a writ, but I find that the second ground is.

The parties have stipulated that "for purposes of determining issues raised by the petition," the transcript of the jury instructions as well as the publications involved "may be received in evidence by this court." The issues have been fully briefed. I conclude that the petition for issuance of a writ of habeas corpus should be granted.

The United States Supreme Court rendered its decision in Miller v. California, 413 U.S. 15 at p. 22, 93 S.Ct. 2607 at p. 2613 (1973), on June 21, 1973. The Court observed:

"*Memoirs* [v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966)] required that to prove obscenity it must be affirmatively established that the material is '*utterly* without redeeming social value.' Thus, even as they repeated the words of *Roth* [354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498], the *Memoirs* plurality produced a drastically altered test

that called on the prosecution to prove a negative, *i. e.*, that the material was '*utterly* without redeeming social value'—a burden virtually impossible to discharge under our criminal standards of proof."

The *Miller* court rejected as a constitutional standard the test of "*utterly* without redeeming social value" articulated in *Memoirs*. 413 U.S. at 24–25, 93 S.Ct. at 2613. It also determined that the jury may measure the essentially factual issues of prurient appeal and patent offensiveness by the standard that prevails in the forum community and need not employ a "national standard." 413 U.S. at 30–34, 93 S.Ct. 2607. Finally, the Supreme Court announced that henceforth the permissible scope of obscenity regulation was confined "to works which depict or describe sexual conduct." 413 U.S. at 24, 93 S.Ct. at 2614.

In State ex rel. Chobot v. Circuit Court, 61 Wis.2d 354, 212 N.W.2d 690 (1973), the Wisconsin supreme court reconstrued § 944.21 to comport with the changes in the law of obscenity wrought by *Miller*. However, in Detco v. McCann, 380 F.Supp. 1366 (E.D.Wis.1974), this court, sitting as a three-judge court, concluded at p. 1368:

> "The newly formulated *Miller* test, as engrafted upon § 944.21 by the Wisconsin supreme court in *Chobot* . . . eases the prosecution's burden and enhances the likelihood of conviction. . . .
>
> To apply retroactively the judicial construction now placed on § 944.21 in *Chobot* . . . would deprive the defendants of due process by denying them fair warning that their actions, when committed, constituted a crime."

The *Detco* court rendered permanent its 1972 order which had enjoined prosecution of the plaintiffs under § 944.21 for what was pre-*Miller-Chobot* conduct. See Detco v. Breier, 349 F.Supp. 537 (E.D.Wis.1972). Thereafter, in Lecus v. Jozwiak (E.D.Wis., No. 74–C–172, decided July 8, 1974), this court vacated a conviction under § 944.21(1)(a), where the petitioner Lecus had been tried under the *Miller-Chobot* standard for conduct which had occurred prior to *Miller*. It should be noted that Mr. Simpson's conduct, conviction, and appeal all occurred prior to *Miller*.

In Hamling v. United States, 418 U.S. 153, 94 S.Ct. 2887, 41 L.Ed.2d 590 (decided June 24, 1974), the United States Supreme Court rejected the petitioner's argument that statutes like § 944.21 were unconstitutionally vague as applied to cases *prior* to the date of the *Miller* decision merely because such statutes did not contain its language or references to specific types of sexual conduct. Nevertheless, the pre-*Miller-Chobot* version of § 944.21 remains subject to constitutional challenge on those grounds which pre-dated and are independent of *Miller* impact.

As noted, prosecution of the *Detco* plaintiffs under § 944.21 for what was pre-*Miller* conduct was enjoined from the outset of such litigation in 1972. The 1974 order which permanently enjoined such prosecutions was premised upon and limited to the due process-retroactivity ground discussed above. Therefore, the *Detco* court did not determine the constitutionality of the pre-*Miller-Chobot* version of § 944.21. Compare Hamling v. United States, 418 U.S. 153, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

It is clear that the petitioner Simpson could not be tried under the *Miller-Chobot* version of § 944.21 for conduct which occurred in 1970. In my judgment, therefore, it would also be inappropriate for this court to utilize the *Miller* standard in determining whether each of the four magazines involved is obscene as a matter of law; an "utterly" different legal standard for obscenity was operative in 1970. See Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.

Ed.2d 1498 (1957); and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). It was as against this pre-*Miller* standard that the petitioner had to measure the legality of his conduct as well as the likelihood that it could give rise to a constitutional conviction. Moreover, it is the *Roth-Memoirs* standard against which the constitutionality of the pre-*Miller* version of § 944.21 and the appropriateness of the jury instructions which were given in this case must be weighed.

With regard to the issue whether, as a matter of law, each of the four magazines is obscene, the decision of the court of appeals in Huffman v. United States, 152 U.S.App.D.C. 238, 470 F.2d 386 (1971) is instructive. The *Huffman* analysis was adopted by the court of appeals for this circuit in Orito v. Powers, 479 F.2d 435 (7th Cir. 1973), as representing "the most thorough exposition of this [the pre-*Miller* obscenity] question we have seen." 479 F.2d 438. In *Huffman,* the court indicated 152 U.S. App.D.C. 238, 470 F.2d at 401:

"As to photographs . . . mere nudity is not obscene, but depiction of sexual acts is obscene. The First Amendment protection for the depiction of nude women applies even to 'girly' magazines . . . where the pictures focus upon the pubic areas and poses are struck in such a way as to emphasize the female genitalia.

"However, the determination of obscenity is not limited to photographs of sexual acts in the conventional sense, as in *Phelper* [v. Texas, 382 U. S. 943, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965)]. It was applied in *Levin* [v. Maryland, 389 U.S. 1048, 88 S.Ct. 767, 19 L.Ed.2d 840 (1968)] to photographs of single males shown in a state of erection. It was applied in *G. I. Distributors* [Inc. v. New York, 389 U.S. 905, 88 S.Ct. 218, 19 L.Ed.2d 219 (1967)] to photographs of two or more males, in undress or nudity, shown in activity as noted above—em-

bracing; wrestling; disrobing; soap-lathering of, and efforts to seize, another's genitalia—and 'embracive postures consonant with and suggestive of an act of pederasty.' These factors put the photographs over the line, as compared with the pictures of two or more men, posed in the out-of-doors, which have been protected [Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967)] notwithstanding partial erections and a lens focus on genitalia.

". . . Pictures of two or more models, apparently known in the trade as 'duals', are more likely to represent 'sexual activity', either in progress or imminent, and must be evaluated independently."

See also Wiener and Dulin v. California, 404 U.S. 988, 92 S.Ct. 534, 30 L.Ed.2d 539 (1971) (citing Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967)).

I have examined the magazines involved here. In my judgment, one of them "Flip Flop," is not obscene as a matter of law. See Orito v. Powers, 347 F.Supp. 150 (E.D.Wis.1972), affirmed 479 F.2d 435 (7th Cir. 1973). Because the remaining three magazines—"Heads Up", "Jaybird Scene" and "Wild Cats" —contain photographs which depict actual or imminent heterosexual, group, and lesbian sexual conduct of the type decried in *Huffman,* I cannot find that such magazines are *not* obscene as a matter of law. On the other hand, such magazines do not depict hardcore pornography, and therefore it cannot be said that they are obscene as a matter of law. See Ginzburg v. United States, 383 U.S. 463, 499 n. 3, 86 S.Ct. 942, 16 L. Ed.2d 31 (1966).

The respondent maintains that

"The real question in this proceeding is not the manner in which the state jury reached its finding that the magazines sold by Simpson were obscene,

but whether in fact, under correct constitutional criteria, the magazines are obscene."

In my judgment, a jury instructed under and applying the appropriate constitutional standard in 1970 could have found that three of the four magazines involved here were obscene. Consequently, "whether in fact, under correct constitutional criteria, the magazines are obscene" turns upon "the manner in which the state jury reached its findings;" contrary to the respondent's position, the petitioner's right to a writ depends on the solution to the latter problem.

I have examined the transcript of the jury instructions. The jury was instructed under the tripartite *Roth-Memoirs* standard. Reference was also made to a national community standard. The court then instructed the jury as follows:

"You will consider the material from the standpoint of its literary, cultural and educational character and determine whether it has any redeeming social or literary value or importance. You are to consider the purposes, the ideas, the pictures and the artistic qualities of the material, if any. Material that describes or represents sex in various forms is not obscene if its social or literary values or importance *outweigh* the prurient or the offensive aspect of it. If the quality of the material has a significand [sic] and overbearing social or literary value it may not be found to be obscene merely because it offends community standards or appeals to prurient interests.

"It is for you to *balance all the factors and elements involved* and determine whether the material is or is not obscene, as obscenity has been defined in these instructions, *giving such weight and effect to each factor and element as you deem it entitled to receive*." (emphasis supplied)

In Memoirs v. Massachusetts, 383 U.S. 413, 419–20, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), a plurality of the United States Supreme Court required that each of the criteria of the test for obscenity be applied *independently*. As the respondent observes, "in the view of the [*Memoirs*] plurality, social value of material neither could be weighed against nor cancelled by its prurient appeal or patent offensiveness."

The respondent suggests that in Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972), the United States Supreme Court recognized that "the requirement that the social value which would redeem an otherwise obscene work must be in proportion to the whole of the work. If any balancing process was hinted at by the Supreme Court in *Kois*, it was limited solely to the determination of the *"utterly* without redeeming social value" element alone and did not open the door for the trier of fact to weigh that independent element as against the other two independent elements set forth in the *Roth-Memoirs* standard.

In my judgment the quoted portion of the court's jury instructions is constitutionally deficient insofar as it undercuts the court's earlier instruction that each of the three elements must be *independently* determined by suggesting a process of element weighing. To find a work not obscene under the *Roth-Memoirs* standard, a jury need not find its "redeeming social value" so serious as to outweigh its other qualities, even if prurient and offensive. Indeed, in rejecting as a constitutional standard the *"utterly* without redeeming social value" test, the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), emphasized the fact that proof of such *independent* element under the *Roth-Memoirs* test created "a burden virtually impossible to discharge" and "called on the

prosecution to prove a negative." 413 U.S. 22, 93 S.Ct. 2613.

The jury instructions eased the prosecution's burden by undercutting the *independent* significance of the *Memoirs* "*utterly* without redeeming social value" test. Therefore, the factual finding of obscenity was not obtained under the appropriate constitutional standards.

I have already noted that a person may not be tried under the *Miller-Chobot* version of § 944.21 for conduct which occurred prior to *Miller*. See Detco v. McCann, 380 F.Supp. 1366 (E. D.Wis.1974), and Lecus v. Jozwiak (E. D.Wis., No. 74–C–172, decided July 8, 1974). In my judgment, the petitioner should not be retried under the pre-*Miller* obscenity standards, since the issue of obscenity is of constitutional dimensions and certain crucial elements of the *Roth-Memoirs* test were substantially altered by the Supreme Court in *Miller*.

With respect to the petitioner's final contention—that the pre-*Miller-Chobot* version of § 944.21 was unconstitutional —it should be noted that in construing such statute, Wisconsin's highest court occasionally departed from or "anticipated" the rulings of the United States Supreme Court. See Detco v. McCann, 380 F.Supp. 1366, 1368 (E.D.Wis.1974). In this first amendment area, it is fair to assume that prior to *Miller*, Mr. Simpson relied upon and gauged his activities against the standards set forth by the United States Supreme Court, as opposed to those set forth by the state tribunal. In my judgment, the issue of the constitutionality of the pre-*Miller* version of § 944.21 need not be determined at this time.

Therefore, it is ordered that the petitioner's application for the issuance of a writ of habeas corpus be and hereby is granted.

It is also ordered that the conviction which gave rise to such application be and hereby is vacated.