296 So.2d 197

**Chester McKINNEY**

v.

**CITY OF BIRMINGHAM.**

**6 Div. 509–516.**

Court of Criminal Appeals of Alabama.

Oct. 30, 1973.

Rehearing Denied Dec. 4, 1973.

Ferris S. Ritchey, Jr., Birmingham, Robert Eugene Smith, D. Freeman Hutton, Atlanta, for appellant.

Herbert Jenkins, Jr., Asst. City Atty., Birmingham, for appellee.

TYSON, Judge.

The appellant, Chester McKinney, was the manager and operator of the "Pussy Cat Adult Theatre," located at 7610 First Avenue, North, Birmingham, Alabama. On each of the dates shown below, Sergeant J. C. Wilson of the Birmingham Police Department purchased a ticket and then viewed each of the "feature films" and also each of the "short subject films" being shown at the theatre in question. Following this, Sergeant Wilson then took Municipal Court Judge T. M. Smallwood to the theatre, where he too purchased a ticket, and then viewed each of the "feature films" and "short subject films" in its entirety before issuing warrants for the arrest of the appellant, and, contemporaneously therewith, search warrants for the seizure of both the "feature films" and "short subject films" then being shown. Each of the films in question is in color, the "feature films" being on one sixteen-millimeter reel, and the second reel seized on each date contained three "short subject films" in color, but without sound. The City charged the appellant with the violation of Municipal Ordinance No. 67–2, Section 2, of the City Code, by virtue of knowingly exhibiting obscene color motion picture films.

| DATE | FEATURE FILM |
|---|---|
| April 14, 1971 | "Vice Hustler" [Also short subject film seized] |
| May 5, 1971 | "Dead Eye Dick" [Also short subject film seized] |
| July 21, 1971 | "Love on a Mountain" [Also short subject film seized] |
| August 18, 1971 | "Fantasy of Love" [Also short subject film seized] |

The City made separate cases for the "feature film" and the "short subject film" on each of the dates in question, there being a total of eight cases which are here consolidated on appeal. Each of the eight cases was presented through stipulation through the City and appellant's counsel to Circuit Judge E. C. Watson, Jr., and the trial judge's order as to each of the eight cases in pertinent part reads as follows:

"The Court, having reviewed the stipulation of facts and the exhibit as a whole, finds that the movie involved is nothing but a film graphically depicting nude men and women with their genitals fully exposed in poses and activities involving actual sexual intercourse, fellatio, cunnilingus between both males and females and other sexual activities, all of which constitute hard core pornography and are obscene within the words of the ordinance and the United States Supreme Court test for determining obscenity for that the dominant theme of the movie appeals to the prurient interest of the average person when taken as a whole, applying contemporary community standards, is patently offensive in that the movie goes beyond the customary limits of candor and explicitness in its representation of sexual matters, and is utterly without any redeeming social value or importance, notwithstanding the fact that there were no juveniles involved and there was no thrusting of the material upon unwilling individuals and there was no pandering in the exhibition of said movie. . . ."

I

The appellant first contends that if any offense was committed on the dates in question, only one offense was committed in that the act in question was a continuous one for which only one charge should be made. Appellant filed a plea of autre fois convict as to the "short subject film" charge on each date in question, and cites to this Court Rutherford v. State, 49 Ala. App. 246, 270 So.2d 678, cert. den. 289 Ala. 751, 270 So.2d 679.

A plea of former jeopardy, such as is here present, is unavailing unless the of-

fense presently charged is precisely the same in law and fact as the former one relied upon under the plea in question. *Rutherford*, supra, and cases cited therein.

■ This Court has viewed each of the eight reels in its entirety and finds that they are not precisely the same in law and fact; hence, the trial court properly denied appellant's pleas in this respect.

II

■ Appellant next contends that the United States Supreme Court in its recent opinion in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, pronounced new standards for courts' guidance as to what constitutes obscenity as a matter of law, and therefore to apply the *Miller* standards in the cases in question would "constitute ex post facto laws."

In *Miller,* supra, the Supreme Court of the United States through Mr. Chief Justice Burger, announced the following standard:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, *supra,* 408 U.S. [229] at 230, 92 S.Ct. [2245], at 2246, 33 L.Ed.2d 312 (1972), quoting Roth v. United States, *supra,* 354 U.S. [476], at 489, 77 S.Ct. [1304], at 1311 [1 L.Ed.2d 1498] (1957), (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of Memoirs v. Massachusetts, *supra,* 383 U.S. [413], at 419, 86 S.Ct. [975], at 977 [16 L.Ed.2d 1] (1966); that concept has never commanded the adherence of more than three Justices at one time.

See pp. 2613–2614, *supra.* If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary . . . ." [Cases cited.]

Further, from *Miller:*

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under the second part (b) of the standard announced in this opinion, *supra:*

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

"Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodation any more than live sex and nudity can be exhibited or sold without limit in such public places. At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection. See Kois v. Wisconsin, *supra,* 408 U.S., at 230–232, 92 S.Ct., at 2246–2247 (1972); Roth v. United States, *supra,* 354 U.S. at 487, 77 S.Ct., at 1310 (1957); Thornhill v. Alabama, 310 U.S. 88, 101–102, 60 S.Ct. 736, 743–744, 84 L.Ed. 1093 (1940). For example, medical books for the education of physicians and related personnel necessarily use graphic illustrations and descriptions of human anatomy. In resolving the in-

evitably sensitive questions of fact and law, we must continue to rely on the jury system, accompanied by the safeguards that judges, rules of evidence, presumption of innocence and other protective features provide, as we do with rape, murder and a host of other offenses against society and its individual members."

■ This Court does not subscribe to appellant's "ex post facto" argument. Article I, Sections 9 and 10 of the United States Constitution are directed to "legislative enactments" rather than judicial decisions. Frank v. Mangrum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969.

Moreover, the standards above set forth in *Miller* have to do with the burden of proof upon the prosecution rather than to adopt a new constitutional standard or test of obscenity. *Miller* points out that the third prong of the Roth[1]-Memoirs[2] Test "called on the prosecution to prove a negative, i. e., that the material was *"utterly* without redeeming social value"—a burden virtually impossible to discharge under our criminal standards of proof."

We have viewed the films in question and find that they fall squarely within the definition of legal obscenity as stated above in *Miller,* supra.

### III

■ Appellant next contends that there was no pandering, no thrusting upon unwilling adults, and that the matter was exhibited in a place of public accomodation, a so-called adult theatre from which minors were excluded. In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, announced by the Supreme Court on the same date as *Miller,* supra, the Court dealt directly with this contention. From this case we quote:

"To summarize, we have today reaffirmed the basic holding of United States v. Roth, *supra,* that obscene material has no protection under the First Amendment. See Miller v. California, *supra,* and Kaplan v. California, 413 U. S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). We have directed our holdings, not at thoughts or speech, but at depiction and description of specifically defined sexual conduct that States may regulate within limits designed to prevent infringement of First Amendment rights. We have also reaffirmed the holdings of United States v. Reidel, [402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813] *supra,* and United States v. Thirty-Seven Photographs, [402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822] *supra,* that commerce in obscene material is unprotected by any constitutional doctrine of privacy. United States v. Orito, *supra,* 413 U.S. 139, at pp. 141–144, 93 S.Ct. 2674, at pp. 2676–2678, [37 L.Ed.2d 513] (1973); United States v. Twelve 200-Ft. Reels, *supra,* 413 U.S. 123, at pp. 126–127, 93 S.Ct. 2665, at pp. 2668–2669 [37 L.Ed.2d 500] (1973). In this case we hold that the States have a legitimate interest in regulating commerce in obscene material and in regulating exhibition of obscene material in places of public accommodation, including so-called 'adult' theatres from which minors are excluded . . . . ."

■ Moreover, since the films in question were stipulated into evidence as evidence "pro and con" of the respective contentions, as stated in Paris Adult Theatre I v. Slaton, supra:

"Nor was it error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence . . . ." [Cases cited]

### IV

Appellant finally contends that Birmingham City Ordinance No. 67–2 is unconsti-

---

1. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

2. Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

tutionally vague in that it does not specifically define "hard core sexual conduct" and further that a national standard controls rather than standards applicable in local communities. This national standard versus local standard argument was rejected in *Miller* with the following observation:

"We conclude that neither the State's alleged failure to offer evidence of 'national standards,' nor the trial court's charge that the jury consider state community standards, were constitutional errors. Nothing in the First Amendment requires that a jury must consider hypothetical and unascertainable 'national standards' when attempting to determine whether certain materials are obscene as a matter of fact . . . ."

■ Further, the *Miller* standards are now read into the Ordinance in question and such Ordinance has heretofore been upheld as constitutional on its face, and this Court also so holds. Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802.

■ Finally, we find that, since there was no request or demand by the appellant that the films in question be returned to the exhibitor to be shown pending a judicial determination on the issue of obscenity vel non, we find that such were lawfully seized as evidence in the several cases in question inasmuch as here there was a determination by a neutral and detached magistrate on the issue of obscenity prior to their seizure. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745, states:

"But seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned."

■ We have carefully reviewed each of these eight cases, as the court must do in protecting First Amendment rights, including all the exhibits, and find that each falls squarely within the *Miller* definitions of obscenity, therefore, these judgments of the trial court are due to be and each of the same is hereby affirmed. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793; United States v. Groner, 5th Cir. (1973), 479 F.2d 577; United States v. Thevis, 5th Cir. (1973), 484 F.2d 1149; McKinney v. State, 287 Ala. 648, 254 So.2d 714; Brazelton v. State, 50 Ala.App. 723, 282 So.2d 342.

Affirmed.

All the Judges concur.