**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold WASSERMAN, Car-Mar Enterprises, Inc., and Abraham Linet, d/b/a Ultima Sales Company, Defendants-Appellants.**

No. 73–3374.

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1974.

Edwin M. Rosendahl, Beverly Hills, Cal., R. James George, Jr., Austin, Tex., for defendants-appellants.

William Sessions, U. S. Atty., Jeremiah Handy, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

After a jury trial, appellants were convicted of violations of the federal statute prohibiting mailing of obscene material, 18 U.S.C. § 1461. The issues presented by this appeal may be summarized:

(1) Under United States v. Thevis, 484 F.2d 1149 (CA5, 1973), cert. denied, 418 U.S. 932, 94 S.Ct. 3222, 41 L.Ed.2d 1170 (1974), and the requirements of the due process clause, did the District

Court err in applying the obscenity standards of Miller v. California, 413 U. S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), in a trial for allegedly criminal acts which occurred before the decision in *Miller* was handed down?

(2) Did the District Court err in instructing the jury that "community standards" were measured by the geographic area constituting the Western District of Texas where the government, in response to appellants' motion for bill of particulars, had stated that the "community standards" were to be determined on the basis of the nation as a whole?

(3) Did the District Court err in failing to admit films and magazines comparable to those at issue in this prosecution and which had previously been found not obscene by previous court decisions?

(4) Did the District Court err in instructing the jury that there was evidence of pandering?

(5) Did the District Court err in refusing to dismiss this prosecution when such prosecution was contrary to a Department of Justice policy memorandum?

### 1. The retroactivity of *Miller*

Appellants' allegedly criminal conduct occurred during the period from November 24, 1970, to January 13, 1972, and appellants were indicted June 15, 1972. During this period from November 24, 1970 to indictment, the constitutional standards for the regulation of obscenity were those established by the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).[1] On June 21, 1973, subsequent to appellants' indictment, the Supreme

[1] The standards required demonstration of these three elements before material could be found obscene: "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts con-

temporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977, 16 L.Ed.2d at 6.

Court handed down a series of opinions [2] which reformulated the definition of obscenity.[3] At the trial, which commenced July 23, 1973, the District Court employed the new 1973 *Miller* definition of obscenity rather than the older *Roth-Memoirs* definition, which action, appellants contend, was contrary to United States v. Thevis, *supra,* and violated the due process clause.[4]

Although the facts of *Thevis* are similar to the facts in the present case, there is an important distinction with respect to the timing of the *Miller* decision in relation to the progress of the respective prosecutions. In *Thevis* the criminal acts were committed, the defendants were indicted, and the trial took place, all prior to the *Miller* decision. Accordingly the defendants received a trial employing the *Roth-Memoirs* standard, the only standard in existence at the time of trial. After trial, however, *Miller* was handed down, and this court determined that defendants were to receive on appeal all the benefits of the *Miller* decision. The court stated:

> [N]o one is [to be] convicted under earlier extant standards if they are more restrictive of pornography than those in *Miller.* . . . [W]e shall

consider both the *Miller* and *Memoirs* definitions of obscenity.

484 F.2d at 1155. Thus *Thevis* held that where a defendant was tried under *Roth-Memoirs* standards, on appeal he may obtain any benefits to be derived from the recent *Miller* decision.[5] In the present case by contrast, Wasserman and his co-defendants were tried under the *Miller* standard, and they contend that this ex post facto application of a new obscenity standard to pre-*Miller* acts was improper. *Thevis* thus has no direct application here.

Despite this factual difference, *Thevis* does, by applying solely the benefits of *Miller,* refuse to apply retroactively the detriments of *Miller.* Conceivably this court, on appeal, could have applied the complete *Miller* test in place of the *Roth-Memoirs* test. Such a course was rejected [6] and has been rejected by other courts.[7] Thus, although factually distinguishable, *Thevis* does offer some support for appellants' position.

Appellants' position is further supported by United States v. Jacobs (CA9, 1974), the one circuit court opinion deciding the issue of the retroactivity of *Miller.*[8] In *Jacobs* the court held that "due process fairness bars the retroac-

---

**2.** Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) ; Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) ; Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L. Ed.2d 492 (1973) ; United States v. 12 200-Ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) ; United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L. Ed.2d 513 (1973).

**3.** The *Roth-Memoirs* formulation was modified, inter alia, that the material no longer must be "utterly" without redeeming social value—lack of "serious literary, artistic, political, or scientific value" is sufficient. In *12 200-ft. Reels, supra,* these modified standards were held to be applicable to federal obscenity statutes.

**4.** In United States v. Hill, 500 F.2d 733 [C.A.5, 1974], this court found it unnecessary to answer the precise issue raised by this case since it was found that the defendants received the benefit of a *Roth-Memoirs* instruction. In the present case the jury was clearly instructed under the *Miller,* not the *Roth-Memoirs,* standard.

**5.** Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) similarly holds that such a defendant on appeal may obtain any benefits to be derived from the *Miller* decisions. *See also* United States v. New Orleans Book Mart, Inc., 490 F.2d 73 (CA5, 1974).

**6.** In a footnote, *Thevis* indicated the probable answer to the issue now presented : "We do not assume, given ex post facto considerations, that the Supreme Court intended to impose any detriment ensuing from the Miller standards on appellants." 484 F.2d at 1155.

**7.** *See* United States v. Palladino, 490 F.2d 499 (C.A.1, 1974), where the court, on remand from the Supreme Court after the *Miller* line of cases, found that "[the defendants] cannot fairly be subjected to penalties for violation of rules established after their action." 490 F.2d at 500.

**8.** Rhodes v. Florida, 283 So.2d 351 (Fla. 1973) and United States v. Lang, 361 F. Supp. 380 (C.D.Cal., 1973) produce results in accord with *Jacobs.*

tive judgment of his conduct using the expanded definition, and the conviction cannot stand." We think *Jacobs* is correct.

■■ The constitutional prohibition against ex post facto applications of law, U.S. Constitution, Article I, § 9, has no application to the present case since it is solely concerned with federal legislation which makes criminal conduct previously not classified as criminal. It does not apply to judicial interpretations of legislation. See James v. United States, 366 U.S. 213, 247–248, 81 S.Ct. 1052, 1070–1071, 6 L.Ed.2d at 246, 269–270 (1961) (separate opinion of JJ. Harlan and Frankfurter). Nevertheless, the policy considerations which support a prohibition against the ex post facto application of a criminal statute are also applicable to judicial decisions which affect the interpretation of a criminal statute. In both cases it is clearly undesirable to punish individuals for acts which, at the time they were performed, were not within the reach of a criminal statute.

The similarity of these policy considerations was demonstrated in Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), where the Supreme Court spoke directly to the propriety of retroactive applications of judicial interpretations of legislation. In *Bouie*, the black defendants entered a white restaurant and refused to leave when asked to do so by the management. The defendants were convicted under a trespass statute which prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." The Supreme Court of South Carolina upheld defendants' conviction by interpreting this

statute as prohibiting staying upon, as well as entering upon, after notice from the owner or tenant. The United States Supreme Court reversed the conviction and found a violation of the due process clause:

> While such a construction is of course valid for the future, it may not be applied retroactively, any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal.

378 U.S. at 362, 84 S.Ct. at 1707, 12 L. Ed.2d at 905. Thus *Bouie* recognized the impropriety in punishing a man for acts which were not considered crimes at the time of their commission.[9] See also Douglas v. Buder, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973); James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

■ *Bouie* is somewhat distinguishable in that the judicial interpretation in that case expanded the reach of the statute in an extreme and unpredictable way while the judicial opinion with which we are concerned [*Miller*] merely redefines "obscenity" in a manner which in no way runs counter to the plain words of the statute. *Miller* did, however, represent a marked shift in the scope of material deemed to be obscene.[10] Therefore in terms of notice to the defendant and the just application of criminal sanctions, we believe the effect on the defendant is the same. Prior to *Miller*, a distributor of sexually oriented material could not recognize that material which simply lacked "serious literary, artistic, political or scientific value" could be constitutionally regulated. As far as such a distributor could deter-

9. Note the Court subsequently stated that these ex post facto considerations are particularly strong where the behavior is not improper or immoral. 378 U.S. at 362, 84 S.Ct. at 1707, 12 L.Ed.2d at 905. Without entering into a consideration of the "immorality" of the acts of the defendants in the present case, we think ex post facto principles are equally applicable in this obscenity conviction.

10. The significance of these changing constructions of the federal obscenity statutes is particularly significant in light of the fact that these statutes avoid due process vagueness difficulties due to authoritative judicial construction. Hamling v. United States, 418 U.S. at 98, 94 S.Ct. at 2898, 41 L.Ed.2d at 616–619. Where this judicial construction is altered, it in essence changes the meaning of the statute. *See also* United States v. Thevis, 484 F.2d at 1155.

mine, he was protected as long as the material was not utterly without redeeming social value. To convict Wasserman for the distribution of material which was protected under the *Roth-Memoirs* standard violates the rationale underlying *Bouie*.

We do not go so far as to hold that the application of the *Miller* standard to Wasserman violated the due process clause. We do hold, however, that such a retroactive application is inappropriate without substantial justification outweighing the above discussed ex post facto considerations. Lacking such justification, the conviction must be reversed.[11]

### 2. Local vs. national "community standards"

██ Appellants contend that the government should be bound to its bill of particulars where it indicated that "community standards" were to be determined on the basis of the nation as a whole. Whether this use of local community standards constituted error we need not decide. Appellants now have adequate notice that the government may desire to have the case governed by local community standards, so that in any subsequent retrial the government is not limited by this statement in the bill of particulars.

### 3. Admissibility of comparable evidence

██ There was no error in refusing to admit into evidence films and magazines comparable to those involved in the present prosecution and which had previously been held nonobscene by court decisions. The Supreme Court has determined that such evidence may properly be excluded in an obscenity prosecution. Hamling v. United States, 418 U. S. 87, 125–127, 94 S.Ct. 2887, 2906, 41 L. Ed.2d 590, 626 (1974).

### 4. The evidence of pandering instruction

██ The trial judge instructed the jury that evidence had been produced "tending to show that the defendant pandered to the prurient interest of his customers" and that such evidence may be considered in determining whether a given film or publication is obscene. Appellants contend that this was error because there was no evidence of pandering and pandering was not charged in the indictment. The advertisements introduced into evidence were sufficient basis for the instruction that evidence had been produced tending to show that defendant pandered.

Pandering need not be charged in the indictment in order to be included in the instructions. Hamling v. United States, 418 U.S. 87, 130, 94 S.Ct. 2887, 2914, 41 L.Ed.2d 590, 628 (1974). See United States v. Ratner, 502 F.2d 1300, 1301–1302 (CA 5, 1974).

### 5. The Department of Justice policy memorandum

██ Appellants contend that the present prosecution was instituted in contravention of a Department of Justice policy memorandum which sought to avoid contemporaneous federal obscenity prosecutions against the same defendant. Assuming that this policy was still in effect at the time the present prosecution was initiated, we find no basis for prohibiting prosecutions which violate internal Department of Justice policy memoranda. The cases cited by appellants are inapposite.

Reversed and remanded.

---

11. Although in a *Thevis*-type situation the appellate court will apply the benefits of *Miller* without requiring a remand, *see* United States v. Ratner, 502 F.2d 1300 (CA5, 1974), it would be inappropriate for this court to usurp the jury function of applying the *Roth-Memoirs* test to the materials at issue. Under *Thevis*, the application of the *Miller* test by the appellate court is justified since the *Miller* formulation was unavailable to the trial court. In the present case, however, the trial court erroneously failed to employ the appropriate existing standard as set forth in *Roth-Memoirs*.