Chester McKINNEY,
Petitioner-Appellant,

v.

James C. PARSONS, Chief of Police,
etc., Respondent-Appellee.

No. 74–2106.

United States Court of Appeals,
Fifth Circuit.

May 23, 1975.
Rehearing Denied June 20, 1975.

Ferris S. Ritchey, Jr., Birmingham, Ala., D. Freeman Hutton, Robert E. Smith, Gilbert H. Deitch, Atlanta, Ga., for petitioner-appellant.

William J. Baxley, Atty. Gen., Montgomery, Ala., Herbert Jenkins, Jr., Asst. City Atty., Birmingham, Ala., for respondent-appellee.

Before BELL, THORNBERRY and GEE, Circuit Judges.

GEE, Circuit Judge:

In May of 1971, Chester McKinney was convicted by the Circuit Court of Jefferson County, Alabama, of six violations of the obscenity ordinance of the City of Birmingham.[1] He appeals the Northern District of Alabama's second[2] denial of habeas corpus relief. Since we find no constitutional infirmity in his convictions, we affirm.

Upon first filing his habeas corpus petition McKinney advanced three grounds upon which the writ should issue. It was his contention (1) that the four magazines and two films involved in the case are not, as a matter of constitutional law, obscene but rather are protected by the First and Fourteenth Amendments, (2) that the trial court denied him due process of law by convicting him without having received any expert testimony on the question of whether the magazines and movies were obscene[3] and (3) that the trial court violated his First, Fifth and Fourteenth Amendment rights by applying a local community standard rather than a national community standard in determining the obscenity vel non of the materials. McKinney now complains, in addition, (4) that the ordinance under which he was convicted is incurably void for vagueness, (5) that it is repugnant to Article 1, § 4 of the Constitution of the State of Alabama, and, also, (6) that the district court, upon reconsideration following remand, failed to follow the instructions of this court.

---

1. ORDINANCE NO. 67–2

 AN ORDINANCE TO MAKE UNLAWFUL THE POSSESSION, PUBLISHING, PRINTING, MANUFACTURING, SALE, DISTRIBUTION, ADVERTISEMENT OR EXHIBITING OF OBSCENE MATTER IN THE CITY OF BIRMINGHAM OR THE POLICE JURISDICTION THEREOF AND PRESCRIBE PENALTIES THEREFOR
 BE IT ORDAINED by the Council of the City of Birmingham as follows:
 Section 1. The following words and terms, when used in this Ordinance, shall for the purpose of this ordinance have the meanings respectively ascribed to them by this section:
 A. "Obscene" means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters. If it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, predominant appeal shall be judged with reference to such audience. If the subject matter is distributed to minors under 18 years of age, predominant appeal shall be judged with reference to an average person of the actual age of the minor to whom such matter is distributed.
 B. "Matter" means any book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription, or mechanical, chemical or electrical reproduction, or any other articles, equipment, machines or materials.
 C. "Person" means any individual, partnership, firm, association, corporation or other legal entity.
 D. "Distribute" means to transfer possession of, whether with or without consideration.
 E. "Knowingly" means having actual or constructive knowledge of the character and content of the subject matter. A person has constructive knowledge if a reasonable inspection under the circumstances would disclose the nature of the subject matter and the failure to inspect it for the purpose of avoiding such disclosure.
 F. "City" means City of Birmingham, Alabama.
 Section 2. It shall be unlawful for any person to knowingly send or cause to be sent or bring or cause to be brought into this City or the police jurisdiction thereof, for the sale or distribution, any obscene matter.
 Section 3. It shall be unlawful for any person to knowingly publish, print, exhibit, distribute or have in his possession with intent to distribute, exhibit, sell or offer for sale, in the City of the police jurisdiction thereof, any obscene matter.
 This ordinance is no longer in effect, having been replaced by City of Birmingham Ordinance No. 73–93.

2. See McKinney v. Parsons, 488 F.2d 452 (5th Cir. 1974).

3. Trial was to the court. Evidence concerning the nonpandering nature of distribution was stipulated. Virtually the only evidence received was the materials themselves.

■ We deal but briefly with four of these six contentions. The want-of-expert-testimony argument is answered by Paris Adult Theatre I. v. Slaton, 413 U.S. 49, 56, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) and Kaplan v. California, 413 U.S. 115, 121, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973).[4] The local-versus-national community standards question has been resolved against McKinney by Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), and by Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). As federal courts, neither we nor the district court has habeas corpus jurisdiction to consider whether McKinney's convictions violated rights secured to him by the Constitution of the State of Alabama.[5] 28 U.S.C. § 2241. Finally, the district court correctly interpreted and followed our remand instructions.

■■ Only rarely does a state conviction for distributing or exhibiting obscene material arrive for review, via habeas corpus proceedings, on the doorstep of a United States Court of Appeals. So far as we know, this is only the second post-*Miller* instance of such an occurrence,[6] and the first in our circuit. Not only is this our first post-*Miller* habeas/obscenity case, it is also the first time we have been called upon to review, post-*Miller*, a conviction which was final pre-*Miller*. We have held that a federal defendant indicted, tried and convicted pre-*Miller* is, on direct appeal, entitled to all of the benefits of the *Miller* definition of obscenity but is free of its detriments. United States v. Thevis, 484 F.2d 1149, 1155, fn. 7 (5th Cir. 1973), cert. denied, 418 U.S. 932, 94 S.Ct. 3222, 41 L.Ed.2d 1170 (1974), *explained in* United States v. Wasserman, 504 F.2d 1012, 1014 (5th Cir. 1975). The Supreme Court has similarly ruled that state court

defendants whose convictions were on direct appeal at the time that the *Miller* series was handed down are due any benefits of those decisions. Jenkins v. Georgia, *supra*. Moreover, we have concluded that a federal defendant indicted pre-*Miller* but prosecuted post-*Miller* must be tried under the *Roth-Memoirs*[7] definition of obscenity, at least insofar as it is more restrictive than the *Miller* definition. United States v. Wasserman, *supra*. None of these cases decides what substantive definition of obscenity should apply when a state-court defendant attacks a final, pre-*Miller* conviction via federal habeas corpus, the more restrictive *Roth-Memoirs* definition or the current *Miller* definition.

■ This case does not require us to decide whether the *Miller* series' interpretation of what is obscene and thus without the protection of the First and Fourteenth Amendments may, in its more expansive aspects, be applied retroactively to uphold a final, pre-*Miller* state conviction which might be judged valid under that test (as well as the given state's statute), but invalid under *Roth-Memoirs*. Here, in convicting McKinney, the state trial court viewed the magazines and films involved and found each obscene within the words of the Birmingham ordinance and that the dominant theme of each

. . . appeals to the prurient interest of the average person within the meaning of the U.S. Supreme Court test when taken as a whole, applying contemporary community standards, and is patently offensive to community standards in that . . . [each] goes beyond the customary limits of candor and explicitness in its representation of sexual matters, and is utterly without any redeeming social value or importance, . . . .

---

4. We see no distinction, helpful to McKinney, in regard to the need for expert testimony, between a case tried to a jury and one tried to the court.

5. We doubt seriously, however, that they did. *See* McKinney v. City of Birmingham, 292 Ala. 726, 296 So.2d 236 (1974).

6. The first was Amato v. Divine, 496 F.2d 441 (7th Cir.), vacated, 419 U.S. 1014, 95 S.Ct. 487, 42 L.Ed.2d 288 (1974), concerning which, more later.

7. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

Both we and the district court, as required, have viewed the materials to test whether, in our independent judgment, they are constitutionally protected. Jacobellis v. Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); United States v. Thevis, *supra*, 484 F.2d at 1155; *cf.* Jenkins v. Georgia, *supra.* And both we and the district court agree with the Alabama trial court that these wretched and pathetic materials are well without the broadest reading of the protection afforded by the *Roth-Memoirs* formulation of obscenity. That is, (a) the dominant themes of the materials taken as a whole appeal to the prurient interests in sex, (b) the materials are patently offensive because they affront the contemporary standards relating to the description or representation of sexual matters of any and all American communities and (c) they are utterly without redeeming social value.[8]

█ There remains only the problem of whether a state defendant whose conviction was final prior to the *Miller* series is entitled to the benefits of those decisions, if any. We conclude, in the spirit of Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), *Jenkins*, *Thevis* and *Wasserman*, that he is. This does not mean, however, as he strenuously maintains, that McKinney's conviction was illegal as based upon a statute void for vagueness. McKinney asserts *Miller* promises that no conviction can be sustained unless based upon a statute which, prior to conviction, whether as written or construed, proscribes *only* works depicting or describing, in a patently offensive way, sexual conduct which has been specifically defined. *Miller, supra,* 413 U.S. at 24, 27, 93 S.Ct. 2607. He points out that the Birgmingham ordinance had never been

authoritatively construed before his conviction and is not, on its face, limited to specifically-defined sexual conduct. He concludes from this that *Miller's* promise has been breached, that he was convicted under a vague statute, and that his conviction, therefore, must be overturned. This analysis, however, reflects the hope of McKinney and not the promise of *Miller*

In deciding Amato v. Divine, 496 F.2d 441 (7th Cir.), vacated, 419 U.S. 1014, 95 S.Ct. 487, 42 L.Ed.2d 288 (1974), the Seventh Circuit adopted almost exactly the line of reasoning advanced by McKinney on the vagueness issue. Its decision, however, was vacated by the Supreme Court, and the case was remanded for reconsideration in light of Hamling v. United States, *supra*, and the decision of the Supreme Court of Wisconsin in State ex rel. Chobot v. Circuit Court, 61 Wis.2d 354, 212 N.W.2d 690 (1973). *Chobot* is a case which, long after Amato's conviction for selling obscene material in violation of Wisc.Stat. § 944.21(1)(a), construes the words "lewd, obscene, or indecent," which are undefined in the statute, as restricted to sexual conduct "defined to be acts of sexual intercourse between humans, normal or perverted, actual or simulated, acts of masterbation, fellatio, cunnilingus, and acts of excretory function, lewd exhibition of the genitals especially in a stimulated condition and sexual relations between humans and animals." *Chobot, supra,* 61 Wis.2d at 370, 212 N.W.2d at 698.[9]

*Hamling,* in an extended discussion of *Miller* and the relationship of that decision to the issue of the vagueness of a given obscenity statute, points out that

> At no point does *Miller* or any of the other obscenity decisions decided last term intimate that the constitutionali-

---

8. McKinney contends that this definition of obscenity has been rejected by the Supreme Court and thus, although stricter than the current standard, may not now be utilized to test the constitutional validity of his conviction. We have considered this argument previously and have rejected it. United States v. Groner, 494 F.2d 499 (5th Cir. 1974), United States v. Thevis, *supra.*

9. *See* Detco, Inc. v. McCann, 380 F.Supp. 1366 (E.D.Wis.1974), in which a three-judge district court held that Wisc.Stat. § 944.21 as construed prior to Court v. State, 63 Wis.2d 570, 217 N.W.2d 676 (1974), a case which followed *Chobot,* was unconstitutional and enjoined prosecution under that statute for conduct occurring prior to the date of the later decision.

ty of pre-*Miller* convictions under statutes such as 18 U.S.C. § 1461 was to be cast in doubt. Indeed, the contrary is readily apparent from the opinions in those cases. We made clear in *Miller*, 413 U.S., at 24, n. 6, 93 S.Ct. [2607], at 2615 [37 L.Ed.2d 419], that our decision was not intended to hold all state statutes inadequate, and we clearly recognized that existing statutes "as construed heretofore or hereafter, may well be adequate." That recognition is emphasized in our opinion in United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

*Hamling*, 418 U.S. at 112, 94 S.Ct. at 2905, 41 L.Ed.2d at 617–18, and that

> *Miller*, in describing the type of material which might be constitutionally proscribed, 413 U.S., at 25, 93 S.Ct. [2607], at 2615 [37 L.Ed.2d 419], was speaking in terms of substantive constitutional law of the First and Fourteenth Amendments. See Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642. While the particular descriptions there contained were not intended to be exhaustive, they clearly indicate that there is a limit beyond which neither legislative draftsmen nor juries may go in concluding that particular material is "patently offensive" within the meaning of the obscenity test set forth in the *Miller* cases. And, while the Court in *Miller* did refer to "specific prerequisites" which "will provide fair notice to a dealer in such materials," 413 U.S., at 27, 93 S.Ct. [2607], at 2616 [37 L.Ed.2d 419], the Court immediately thereafter quoted the language of the Court in Roth v. United States, 354 U.S., at 491–492, 77 S.Ct. [1304], at 1312–1313 [1 L.Ed.2d 1498], concluding with these words: "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . . " 413 U.S., at 28 n. 10, 93 S.Ct. [2607], at 2617 [37 L.Ed.2d 419].

*Hamling*, 418 U.S. at 114, 94 S.Ct. at 2906, 41 L.Ed.2d at 619. Moreover, in *Hamling*, the Court states that the seeming dictate of *Miller* that statutory proscriptions of obscenity be made explicit, either by their own language or by judicial construction, was an adjuration, an earnest or solemn urging or advising, and not a constitutional command. *Hamling*, 418 U.S., at 114, 94 S.Ct. at 2906, 41 L.Ed.2d at 619. The Court construed 18 U.S.C. § 1461, a statute which prohibits the use of the mails for transmitting, etc. "every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance" as "limited to the sort of 'patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in Miller v. California' ", *Hamling*, 418 U.S. at 114, 94 S.Ct. at 2906, 41 L.Ed.2d at 618, just as it had previously so construed 18 U.S.C. § 1462 in United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). It then held that "as so construed, we do not believe that petitioners' attack on the statute as unconstitutionally vague can be sustained." *Hamling*, 418 U.S. at 114, 94 S.Ct. at 2906, 41 L.Ed.2d at 619. The Court continued:

> It is plain from the Court of Appeals' description of the brochure involved here that it is a form of hard-core pornography well within the types of permissibly proscribed depictions described in *Miller*, and which we now hold § 1461 to cover. Whatever complaint the distributor of material which presented a more difficult question of obscenity *vel non* might have as to the lack of a previous limiting construction of 18 U.S.C. § 1461, these petitioners have none.

The convictions of all petitioners were affirmed.

 Several lessons about the vagueness of obscenity statutes are to be drawn from *Hamling* and from the vacating of Amato v. Divine, *supra*. Traditionally, statutes purporting to restrict conduct colorably within protection of

the First Amendment have been found vague for any of three reasons. These are that the law, because of its indefiniteness, (1) either fails to give fair notice to those persons potentially subject to it, or (2) fails to guard adequately against arbitrary and discriminatory enforcement, or (3) fails to provide sufficient "breathing space" for First Amendment rights. *See* W. LaFave and A. Scott, Handbook on Criminal Law, § 12 (1972). It has been the rule that one attacking his conviction on the ground that the statute under which he was convicted was overbroad or vague and thus failed to provide sufficient breathing room for First Amendment rights, need not show that his individual conduct could not have been regulated by a properly drawn statute, Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). *Hamling* now teaches that such a "defense" to conviction or the affirmance of conviction is not available once the statute under consideration has been authoritatively construed so as to render it constitutionally acceptable, even if the construction occurred after the original conviction. The vacating of *Amato* indicates that this principle is applicable to habeas corpus attacks on state statutes authoritatively construed subsequent to conviction. Another lesson of *Hamling* is that subsequent construction of a seemingly indefinite statute adequately allows an appellate court to determine whether a particular conviction was arbitrary or discriminatory. Finally, *Hamling* re-emphasizes the general principle that, when the vagueness attack centers on want of fair notice, the person convicted must, to prevail, demonstrate that the statute as written or construed at the time of his conviction would fail to alert the average man that what he was convicted of was proscribed. Applying these principles to the case at bar, we affirm the district court's denial of McKinney's request for habeas corpus relief.

The Birmingham ordinance has been authoritatively construed as limited to materials depicting or describing the type of hard-core sexual conduct de-scribed in *Miller*. McKinney v. City of Birmingham, 52 Ala.App. 605, 296 So.2d 197, 201 (Ct.Crim.App.1973), cert. denied, 292 Ala. 726, 296 So.2d 202, cert. denied, —— U.S. ——, 95 S.Ct. 1335, 43 L.Ed.2d 429 (1975). As so construed, it is constitutional, leaves adequate breathing space for First Amendment rights, and adequately advises juries and courts, both *nisi prius* and appellate, of the type of conduct which it regulates. Neither McKinney nor any other soul has or could demonstrate that the statute as written might fail to notify the average man that the revolting and often pitiful magazines and films involved in this case were prohibited by it.

Affirmed.