**Jim MOSES, Fred Stern, James Gaudie, Scott Gillan and Robert Burns, individually and d/b/a the Odyssey, Plaintiffs,**

**v.**

**The COUNTY OF KENOSHA, a body politic and corporate, the Board of Supervisors of the County of Kenosha, Angelo Capriotti, individually and as Chairman of the Board of Supervisors of the County of Kenosha, and Frederick Ekornaas, individually and as Sheriff of Kenosha County, Defendants.**

**No. 86–C–418.**

United States District Court,
E.D. Wisconsin.

Nov. 21, 1986.

William R. Binetti, Racine, Wis., Michael Null, Chicago, Ill., for plaintiffs.

Michael Hopkins, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

CURRAN, District Judge.

In January 1986, the Kenosha County Board of Supervisors created Section 9.10.2 of the Municipal Code of Kenosha County in the following form:

OBSCENITY

(1) *Definitions.* In this section, the following words shall have the following definitions:

(a) "Obscene Material" means a writing, picture, sound recording or film and "Obscene Performance" means a live exhibition before an audience which:

1. The average person, applying contemporary community standards, would find appeals to prurient interests if taken as a whole;

2. Under contemporary community standards, describes or shows sexual conduct in a patently offensive way; and

3. Lacks serious literary, artistic, political or scientific value as measured by objective standards if taken as a whole.

(b) "Sexual conduct" means the commission or simulation of any of the following: sexual intercourse, sodomy, beastiality, necrophilia, human excretion, masturbation, sadism, masochism,

fellatio, cunnilingus or lewd exhibition of human genitals.

(2) Whoever does any of the following with knowledge of the character and content of the material or performance is guilty of a violation of the Municipal Code of Kenosha County:

(a) Imports, prints, advertises, sells, has in his or her possession for sale, or publishes, exhibits or transfers any obscene material.

(b) Advertises, produces or performs in any obscene performance.

(c) Has in his or her possession, with intent to transfer or exhibit to a person under the age of 18 years, any obscene material.

(d) Transfers or exhibits any obscene materials to a person under the age of 18 years.

(e) Requires, as a condition to the purchase of periodicals, that a retailer accept obscene materials.

(3) In determining whether material is obscene under subsection (1)(a)1. and 3., a judge or jury shall examine individual pictures or passages in the context of the work in which they appear.

(4) *Penalty.*

(a) Any person who shall violate any provision of this ordinance shall, upon conviction thereof, forfeit not less than $500.00 nor more than $1,000.00 together with the costs of prosecution and in default of payment of such forfeiture and cost of prosecution, shall be imprisoned in the county jail until such forfeiture and costs are paid, but not exceeding 90 days.

(b) Any person found guilty of violating any provision of this ordinance who shall previously have been convicted of violating any provision contained in this ordinance within any 365 day period, shall upon conviction thereof, forfeit not less than $1,000.00 nor more than $10,000.00 for each such offense, together with the costs of prosecution and in default of payment of such forfeiture and costs, shall be imprisoned in the county jail until such forfeiture

and costs of prosecution are paid, but not exceeding six months. The 365 day period shall be measured from the dates of violations which resulted in convictions.

(5) *Severability and Non-Liability*

(a) If any section, clause, provision or portion of this ordinance is adjudged unconstitutional or invalid by a court of competent jurisdiction, the remainder of this ordinance shall not be affected thereby.

On April 23, 1986, an action was commenced in this court seeking declaratory judgment that the ordinance is unconstitutional and a permanent injunction against its enforcement. The plaintiffs include the owner, employees, and a former employee of the Odyssey located in Bristol Township, Kenosha County, Wisconsin. The Odyssey is in the business of selling and renting sexually explicit books, magazines and films, euphemistically called "adult bookstores." Certain, if not all, of the plaintiffs have been issued citations for the sale of obscene material pursuant to the ordinance.

On July 10, 1986, the plaintiffs moved for a preliminary injunction. After the matter became fully briefed, the court reviewed the materials and determined to exercise its authority under Federal Rule of Civil Procedure 65(a)(2), consolidating the hearing on the plaintiffs' motion for a preliminary injunction with a trial on the merits. The parties were informed of this decision by Order of October 21, 1986, and final arguments were heard on November 14, 1986. During the course of the hearing the court was informed that the first of the trials brought against one of the plaintiffs, pursuant to the ordinance, would be commencing shortly.

The parties further represented to the court that a Wisconsin Circuit Court has upheld the constitutionality of the ordinance. The decision is being appealed and it was suggested that the appellate court may certify the case to the Wisconsin Supreme Court. Counsel offered the opinion that it might take over a year before the

Wisconsin Supreme Court could hear and decide the matter. The court accordingly has determined that under the circumstances abstention is inappropriate, *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and I will proceed to consider the facial constitutional challenge to the Kenosha ordinance. I find that the plaintiffs have standing to mount the constitutional challenge to the ordinance, *American Booksellers v. Hudnut*, 771 F.2d 323 (7th Cir.1985) *aff'd mem.*, —— U.S. ——, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). There have been no objections raised as to the ripeness of this matter and the court finds the issues constitutionally ripe, *Thomas v. Union Carbide Agr. Products Co.*, —— U.S. ——, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

## DECISION

Where freedom of speech and press are involved, all courts must remain sensitive to any attempted infringement on genuinely serious literary, artistic, political, or scientific expression. Obscenity, however, is not within the area of constitutionally protected speech or press.

In 1973, the United States Supreme Court redefined the constitutional standards by which the states could legislate against obscene materials. The Court formulated a tripartite system by which the trier of fact would determine "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24,

93 S.Ct. 2607 2614, 37 L.Ed.2d 419 (1973) (citations omitted). Several months after *Miller*, the Wisconsin Supreme Court considered the constitutionality of Wisconsin Statute Section 944.21(1)(a),[1] found that the section was facially vague under the *Miller* test but saved the statute by judicial interpretation, *State ex rel. Chobot v. Circuit Court*, 61 Wis.2d 354, 212 N.W.2d 690 (1973). In construing the word "obscene," however, the *Chobot* court held that all three components of the test, including the literary, artistic, political or scientific value of the work, were to be determined by their effect upon the average person, applying contemporary community standards. *Id.* at 370, 212 N.W.2d 690.

In *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), however, the Supreme Court noted that *Miller* did not stand for the proposition that the literary, artistic, political or scientific merit of a work was to be judged in terms of contemporary community standards referring to Professor Schauer's work, *The Law of Obscenity*, at page 123–24. The Court also noted that the determination of the value of a work is "particularly amenable to appellate review." *Id.* at 305, 212 N.W.2d 690. Following the decision in *Smith*, the Wisconsin Supreme Court in *State v. Princess Cinema of Milwaukee*, 96 Wis.2d 646, 292 N.W.2d 807 (1980), declined to further judicially modify the criminal obscenity statute and declared it unconstitutionally overbroad.

The plaintiffs' facial attack upon the constitutionality of the Kenosha ordinance falls into three categories: first that the use of the term "objective standards" in prescribing the determination of the value of the work renders the ordinance constitutionally overbroad and vague; second, that the inclusion of nonerotic, nonsexual con-

---

**1.** Section 944.21(1)(a) Wis.Stats. provides as follows:

Lewd, obscene or indecent matter, pictures and performances.

(1) Whoever intentionally does any of the following may be fined not more than $5,000.00 or imprisoned not more than five years or both:

(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film; ...

duct, specifically human excrement, sadism and masochism within the definition of sexual conduct, renders the ordinance constitutionally infirm; and third, that the fact that the patent offensiveness of the depiction of sexual conduct need not be determined in the context of the work renders the ordinance unconstitutional.

### OBJECTIVE STANDARDS

■ Professor Schauer in *The Law Of Obscenity*, (BNA 1976) in the section cited by the Supreme Court in *Smith v. United States*, 431 U.S. at 301, 97 S.Ct. at 1764, noted the fact that the *Miller* court properly avoided applying contemporary community standards to the determination of the value of the work. After positing "the principle that *any* expression of *ideas* is within the scope of First Amendment protection" Professor Schauer concluded that subjecting the literary, artistic, political or scientific value of a work to local community standards would result in the intolerable conclusion that First Amendment values would vary with time and place.

While the plaintiffs' argument based on overbreadth is not entirely clear, the court presumes it to be that a work which has serious literary, artistic, scientific or political value and thus entitled to First Amendment protection may not be afforded that protection because the term "objective standards" is impermissibly narrow. The vagueness argument is that men of common intelligence would be forced to guess at the meaning of "objective standards" and would differ as to the application of that term.

The plaintiffs acknowledge that a national standard is to be employed by the fact finder in coming to a determination as to whether the work lacks serious value. They argue, however, that in no dictionary which they consulted was "objective" defined as "national" nor would an average man, other than perhaps an attorney, so construe the word. They point to the fact that the word objective can mean many things, with the most obvious definition being the opposite of "subjective."

The court agrees that this is the most logical definition of "objective" in the context of a standard. Websters Third New International Dictionary (1981) defines "objective" as "expressing or involving the use of facts without distortion by personal feelings or prejudices." As examples, the dictionary offers an "objective analysis" or "objective tests." Thus, an objective standard would be a measure unaffected by the prejudices or character of the relevant community. If this standard is totally freed from the subjective, it is truly valid or real. Thus, an objective standard employed in Maine ideally will yield the same result as if the same standard were employed in Oregon. Consequently, although the average man may not equate the word "objective" with the word "national," the employment of an objective standard will result in a conclusion which will not vary from state to state.

The Wisconsin Supreme Court also recognized this in *Princess Cinema* when it stated that "[t]he standard for assessing the third part of the *Miller* test is an objective one. The individual cannot be expected to anticipate whether a particular community will consider an allegedly obscene item to have serious merit under the categories enumerated in *Miller*. Although there was no explicit statement in *Miller* that the third part of the test was to be an objective one, neither was there any indication that the court intended to superimpose contemporary community standards on to this part of the test. 'Nowhere does the opinion [in Miller] suggest that ... value of sexually oriented expression is to be judged on such a parochial basis.' *United States v. Heyman*, 562 F.2d 316, 318 (4th Cir.1977)." *State v. Princess Cinema of Milwaukee*, 96 Wis.2d at 654, 292 N.W.2d 807 (footnote omitted). It is therefore reasonable to conclude that Wisconsin courts will construe "objective" to mean "national," a construction which should be given deference. *Chardon v. Fumero Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). Thus, the court cannot find that the term objective standard ren-

ders the Kenosha ordinance either vague or overbroad.

■ Plaintiffs next argue that even if the use of objective standards does not render the ordinance vague nor overbroad, it is still unconstitutional because it fails to prescribe what the objective standards are. Relying on *Shuttleworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), they argue that the Kenosha ordinance fails to prescribe clear, narrow, and definite standards. *Shuttleworth*, however, is clearly distinguishable in that it stands for the proposition that where there is a prior restraint of a First Amendment right there must exist ascertainable standards to guard against discriminatory enforcement of the ordinance. The Birmingham ordinance at issue had conferred upon the City Commission "virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city streets or public ways." *Shuttleworth*, 394 U.S. at 150, 89 S.Ct. at 938. The licensing of public demonstrations without narrow, objective and definite standards to be employed is clearly distinguishable from a determination to be made by a trier of fact that the value of a work challenged as being obscene is to be determined by an objective standard. As discussed previously, the term objective standard is clear on its face and needs no further definition.

## SEXUAL CONDUCT

■ In its formulation of basic guidelines for the fact finder, the *Miller* court held that sexual conduct which is depicted in a patently offensive way must be specifically defined. In complying with this requirement, the Kenosha ordinance lists eleven instances which comprise sexual conduct. The plaintiffs argue that human excretion, sadism and masochism are not necessarily sexual and thus render the ordinance overbroad. The court agrees that human excretion is a normal function and sadism and masochism can be nonsexual or nonerotic. However, the *Miller* scheme would require the fact finder to first deter-

mine whether the work, taken as a whole, appeals to prurient interests before considering the patently offensive depiction of sexual conduct.

Pruriency has been most commonly defined as that which appeals to a shameful or morbid interest in sex. *Roth v. United States*, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

The *Miller* court itself, while disclaiming any attempt to propose regulatory schemes for the states, did offer "a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra:* (a) patently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated; (b) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Miller*, 413 U.S. at 25, 93 S.Ct. at 2607. Thus, since the jury must first find that the work as a whole appeals to prurient interests, the plaintiffs' challenge concerning nonsexual or nonerotic depictions of human excretion, masochism or sadism is without merit. Inclusion of those three instances does not render the statute overbroad.

## IN THE CONTEXT OF THE WORK

■ The plaintiffs next challenge subsection (3) as being unconstitutionally vague and adding unconstitutional requirements to the *Miller* guidelines. Subsection (3) provides that "in determining whether material is obscene under subsection (1)(a)1. [The prurient interest finding] and 3. [the serious literary, artistic, political or scientific value finding], a judge or jury shall examine individual pictures or passages in the context of the work in which they appear." The defendants argue that the "in the context" requirement is merely a repetition of the "as a whole" requirement set forth in *Miller* and regret its inclusion in the ordinance because it is merely surplusage. In the alternative they request that if this court finds subsection

(3) constitutionally infirm, that the section be severed from the ordinance in accordance with subsection (5).

The court agrees with the defendant's position that subsection (3) is surplusage. It appears to be directed at the type of situation which occurred in *Kois v. Wisconsin*, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972). Kois was the publisher of an underground newspaper who had been convicted of violating Wisconsin Statute Section 944.21(1)(a), disseminating lewd, obscene or indecent written matter. At issue was a copy of the newspaper which carried a story about one of the newspaper's photographers who had been charged with possession of obscene material. Accompanying the news article were two small pictures depicting a nude man and a nude woman embracing. The pictures were described as being similar to those seized from the photographer. In reversing the conviction, the Court found that the article was not a vehicle for the publication of the pictures. Although the Court found it unnecessary to consider whether or not the state could prohibit the dissemination of the pictures by themselves, it found that in the context in which they appeared, they were rationally related to the article which was "clearly entitled to the protection of the Fourteenth Amendment." *Kois*, 408 U.S. at 231, 92 S.Ct. at 2246.

It would thus appear that requiring the fact finder to examine pictures and passages in their context is but a further safeguard with respect to the finding of whether the work taken as a whole appeals to prurient interest and whether the work taken as a whole lacks serious literary, artistic, political or scientific value. It is difficult to conceive of a situation in which a fact finder is called upon to consider a work as a whole and not consider the parts of the work in their various contexts.

■ The plaintiffs also argue that the finding of patent offensiveness with respect to the description or depiction of sexual conduct ought to be considered either in context or taken as a whole. Again, the court finds this an unnecessary requirement and one not mentioned in *Miller*. One must consider the entire scheme of the fact finder's determination. The jury must first find that the work taken as a whole appeals to prurient interests. If it does not, the consideration stops. If it does, then the jury considers whether the description or depiction of sexual conduct is patently offensive. Thus, there is no need for a requirement that the depiction of sexual conduct be considered in its context because the work has already been considered as a whole in coming to the determination that it appeals to prurient interests. The court, accordingly, finds that there is no requirement to consider the patent offensiveness of the depiction of sexual conduct to be taken as a whole.

Having found that the Kenosha County Obscenity Ordinance passes constitutional muster, the court has determined that the better course is to abstain from addressing whether the ordinance is violative of Wisconsin state policy and whether Kenosha County has the authority to enact such legislation. This is a matter to be more appropriately addressed by either the Wisconsin Legislature or Wisconsin courts. Accordingly,

IT IS ORDERED that judgment is entered on behalf of the defendants and against the plaintiffs and the action dismissed.